# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANCELY FANFAN, MARIA LADONADO CRUZ, and ELESBAN ANGEL MENDEZ,<br><br>        Petitioners-Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, Secretary of Homeland Security, CHRISTOPHER J. LAROSE, Warden, Otay Mesa Detention Center; DANIEL A. BRIGHTMAN, Field Office Director, San Diego Field Office, United States Immigration and Customs Enforcement; TODD M. LYONS, Acting Director, United States Immigration and Customs Enforcement; PAMELA JO BONDI, Attorney General in their official capacities,<br><br>        Respondents-Defendants. | Case No.: 25cv3291 DMS (BJW)<br><br>**ORDER GRANTING PETITIONERS' EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER** |

    This case comes before the Court on Petitioners' ex parte motion for a temporary restraining order. Respondents filed an opposition to the motion, and Petitioners filed a reply. The motion came on for hearing on December 11, 2025. Monica Langarica, Bardis Vakili, and Sofia Lopez Franco appeared for Petitioners, and Juliet Keene and Erin

Dimbleby appeared for Respondents. After considering the parties' briefs, the relevant legal authority and record, and hearing argument from counsel, the Court grants the motion.

## I.

## BACKGROUND

Petitioner Chancely Fanfan is a citizen of Haiti who presented at a port of entry for his CBP One appointment on October 21, 2024. (Compl. ¶¶ 44, 46, ECF No. 1.) After inspection, DHS released Mr. Fanfan on parole with a Notice to Appear ("NTA") in immigration court on January 16, 2025. (*Id.* ¶ 47; Resp'ts' Opp'n, Ex. 2, ECF No. 7-2.) On January 17, 2025, DHS moved to dismiss the immigration proceedings against Mr. Fanfan. (Respondents' Opp'n, Ex. 4, ECF No. 7-4.) On May 28, 2025, DHS issued another NTA to Mr. Fanfan ordering him to appear in immigration court on June 30, 2025. (Resp'ts' Opp'n, Ex. 3, ECF No. 7-3.) It appears that hearing may have been continued to October 20, 2025. According to Petitioners, about a week before that date, Mr. Fanfan received a letter from DHS in the mail instructing him to attend a check-in with ICE immediately following his court hearing. (Compl. ¶ 50.) Mr. Fanfan attended his court hearing and thereafter reported to ICE for his check-in where he was detained by ICE agents. (*Id.* ¶¶51-53.) Mr. Fanfan was then transferred to Otay Mesa Detention Center, where he remains in custody. (*Id.* ¶ 58.)

Petitioner Maria Maldonado Cruz is a citizen of Honduras. (*Id.* ¶ 61.) She entered the United States with her child on August 15, 2019, where she was detained by Border Patrol agents. (Resp'ts' Opp'n, Ex. 6, ECF No. 7-6.) During inspection, Ms. Cruz stated she had a fear of returning to her home country. (*Id.*) She was processed for removal proceedings, and then released from custody with an NTA. (Compl. ¶ 63.) DHS issued a subsequent NTA on September 3, 2019, ordering Ms. Cruz to appear in immigration court on January 15, 2020, which she did. (Resp'ts' Opp'n, Ex. 7, ECF No. 7-7; Compl. ¶ 68.) On April 12, 2022, the immigration judge administratively closed Ms. Cruz's immigration case, (Resp'ts' Opp'n, Ex. 8, ECF No. 7-8), but Ms. Cruz continued to appear at subsequent ICE check-ins. (Compl. ¶ 69.) On July 3, 2025, DHS moved to recalendar Ms. Cruz's

case, which the immigration judge granted. (Resp'ts' Opp'n, Ex. 9, ECF No. 7-9.) After inadvertently missing an ICE check-in on October 2, 2025, Ms. Cruz and her attorney reported to ICE on October 15, 2025, where Ms. Cruz was detained. (Compl. ¶¶ 74-79.) She was transferred to OMDC, where she remains in custody. (*Id.* ¶ 80.)

Petitioner Elesban Angel Mendez is a citizen of Mexico. (Resp'ts' Opp'n, Ex. 11, ECF No. 7-11.) He entered the United States on July 16, 2006, and has lived here since then. (*Id.*; Compl. ¶ 85.) On September 21, 2014, Mr. Mendez was arrested for driving under the influence. (Compl. ¶ 86.) Soon after, he was taken into ICE custody. (*Id.*) The next day ICE released Mr. Mendez on an order of release on his own recognizance and with an NTA ordering him to appear in immigration court at a later date. (*Id.*) Approximately two years later, Mr. Mendez's immigration case was administratively closed. (Resp'ts' Opp'n, Ex. 12, ECF No. 7-12.) In July 2025, DHS moved to recalendar Mr. Mendez's case, and the immigration judge granted that motion. (Resp'ts' Opp'n, Ex. 13, ECF No. 7-13.) Subsequently, Mr. Mendez received a letter instructing him to appear for an ICE check-in on October 14, 2025. (Compl. ¶ 90.) Mr. Mendez appeared for that check-in where he was detained. (*Id.* ¶ 91.) Mr. Mendez was subsequently transferred to OMDC, where he remains in custody. (*Id.* ¶ 93.)

On November 25, 2025, Petitioners filed the present Class Complaint and Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.[1] The Complaint alleges five claims for relief: (1) Violation of the Fifth Amendment Due Process Clause (substantive due process), (2) violation of the Fifth Amendment Due Process Clause (procedural due process), (3) violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a), (4) violation of the Administrative Procedure Act ("APA") (unlawful agency action), 5 U.S.C. § 706(2), (5) and violation of the APA (arbitrary and capricious agency action). Petitioners request, among other relief, that the Court issue a writ of habeas corpus

---

[1] Although the case was filed as a class action, Petitioners have not filed a motion for class certification. The present motion therefore requests relief as to the named Petitioners only.

requiring Respondents to release Petitioners and issue an injunction preventing Respondents from re-detaining Petitioners "without a hearing at which Respondents prove changed circumstances regarding their dangerousness or risk of flight warrant their detention[.]" (Compl. at 30.)

## II.

## LEGAL STANDARD

The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. *See Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Cal. 1995). "A party seeking a preliminary injunction must meet one of two variants of the same standard." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017). Under the *Winter* standard, a party is entitled to a preliminary injunction if it demonstrates (1) "that [it] is likely to succeed on the merits," (2) "that [it] is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in [its] favor," and (4) "that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Under the Ninth Circuit's "'serious questions' test—a 'sliding scale' variant of the *Winter* test— . . . a party is entitled to a preliminary injunction if it demonstrates (1) 'serious questions going to the merits,' (2) 'a likelihood of irreparable injury,' (3) 'a balance of hardships that tips sharply towards the plaintiff,' and (4) 'the injunction is in the public interest.'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (quoting *All. for the Wild Rockies*, 865 F.3d at 1217). Under the "serious questions" test, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *All. for the Wild Rockies*, 865 F.3d at 1217 (citation omitted)) (emphasis in original). A plaintiff need demonstrate likely success or serious questions on only one of their claims to receive a TRO. *See*

*Ozkay v. Equity Wave Lending, Inc.*, No. 20-cv-08263-JST, 2020 WL 12764953, at *2 (N.D. Cal. Nov. 25, 2020).

## III.

## DISCUSSION

Turning first to the likelihood of success factor, Petitioners argue they are likely to succeed on all of their claims. On their procedural due process claim, in particular, Petitioners argue they are likely to succeed based on the factors set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under that case, the Court must consider:

> three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Here, Petitioners argue their right to be free from government imprisonment is being affected by their continued detention. In *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), the Supreme Court stated "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Furthermore, "[e]ven when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release." *Pablo Sequen v. Albarran*, ___ F.Supp.3d ___, 2025 WL 2935630, at *5 (Oct. 15, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). District courts in the Ninth Circuit "consistently hold that if DHS has released a noncitizen pending civil removal proceedings, the noncitizen has a protected liberty interest in remaining out of immigration custody." *Id.* This Court agrees. This factor therefore weighs in favor of Petitioners.

Next, Petitioners contend there is a high risk of erroneous deprivation of this liberty interest when noncitizens are re-detained without a custody or bond hearing. They also argue that requiring the Government to conduct a hearing before subjecting noncitizens to re-detention would guard significantly against that risk. Several district courts in California agree with Petitioners, *see*, *e.g.*, *id.* at *11 (citing cases), as does this Court. Thus, this factors also weighs in favor of Petitioners.

On the third factor, Petitioners assert there is no countervailing government interest justifying their re-detention where they present no flight risk or danger to the community. "The government may have 'a strong interest' in detaining noncitizens during the pendency of removal proceedings as needed to 'protect[ ] the public from dangerous criminal aliens,' or to prevent flight and thereby 'increase the chance that … the aliens will be successfully removed.'" *Pablo Sequen v. Kaiser*, ___ F.Supp.3d ___, 2025 WL 2650637, at *8 (N.D. Cal. Sept. 16, 2025) (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). However, when the Government has previously decided to release a noncitizen and there is no evidence in the record of any changed circumstance that might have caused the Government to reconsider its initial decision to release the noncitizen, courts have found the Government's interest in re-detention is low. *Doe v. Chestnut*, No. 1:25-cv-01372-CDB (HC), 2025 WL 3295154, at *10 (E.D. Cal. Nov. 26, 2025) (citations omitted). This factor, too, weighs in favor of Petitioners.

Respondents did not address the *Mathews* factors in their opposition to Petitioners' motion. Instead, they suggest Petitioners are unlikely to succeed on their due process claims because they have only been detained for a short time. But the length of Petitioners' detentions is irrelevant to their procedural due process claims, which focus on the process Petitioners were entitled to *before* they were re-detained. That Petitioners have been re-detained for a relatively short time says nothing about whether they received the process they were due before being re-detained.

Respondents raise only two additional arguments in response to Petitioners' motion. The first is that 8 U.S.C. §§ 1252(g) and 1252(b)(9) deprive this Court of jurisdiction to

consider Petitioners' claims. In several previous decisions, this Court has rejected that argument. *See Medina-Ortiz v. Noem*, No. 25-cv-2819-DMS-MMP, ECF No. 7; *Vasquez Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *3–4 (S.D. Cal. Sept. 3, 2025). Respondents offer no argument or authority warranting departure from the Court's previous orders, and thus the Court stands on its previous decisions rejecting these arguments.[2]

Respondents' second argument is Petitioners are lawfully detained under 8 U.S.C. § 1225(b)(2). The Court has considered this argument in previous cases and rejected it. Here, Respondents cite a relatively new case to support their argument, *Altamirano Ramos v. Lyons*, ___ F.Supp.3d ___, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025). In that case, Judge Wilson reconsidered his previous ruling rejecting Respondents' argument and found the petitioner was subject to mandatory detention under § 1225(b)(2)(A), and therefore not eligible for a bond hearing under § 1226(a). In coming to that conclusion, Judge Wilson found first that the petitioner was an "applicant for admission" subject to mandatory detention. Second, Judge Wilson stated § 1226(a) did not apply to the petitioner's detention because he was not detained pursuant to a warrant. Finally, Judge Wilson found his interpretation of the statutes was "consistent with the longstanding 'entry fiction' doctrine" under which "an alien who is physically present but has not been lawfully admitted into the country is 'legally considered to be detained at the border and hence as never having effected entry into this country.'" *Id.* at *7 (quoting *Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094, 1097 (9th Cir. 2004)). *Altamirano* clearly supports Respondents'

---

[2] In a footnote, Respondents urge the Court to require Petitioners to exhaust their administrative remedies. Like the jurisdictional argument, the Court has considered and rejected this argument. *See Mendez Chavez v. Noem*, Case No. 25cv2818 DMS (SBC), ECF No. 8 at 3; *Esquivel-Ipina v. LaRose*, No. 25-CV-2672 JLS (BLM), 2025 WL 2998361, at *3-4 (S.D. Cal. Oct. 24, 2025) (finding exhaustion would be futile in light of *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025)); *Vasquez v. Feeley*, No. 2:25-cv-01542-RFB-EJY, 2025 WL 2676082, at *10 (D. Nev. Sept. 17, 2025) (same). The Court stands on its previous decisions on this issue, as well.

argument here, but the majority of courts continue to find that re-detentions like the ones at issue here are governed by 8 U.S.C. § 1226(a), not § 1225(b)(2).

Regardless of which statute governs Petitioners' detentions, however, this statutory argument—as well as Respondents' statutory arguments under 8 U.S.C. §§ 1252(g) and 1252(b)(9)—do not address Petitioners' procedural due process claim. In other words, Respondents' asserted compliance with the statutes does not demonstrate they have satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]" *Tot v. United States*, 319 U.S. 463, 472 (1943) (Black, J., concurring).

Considering the *Mathews* factors and the parties' arguments, the Court finds Petitioners have demonstrated a likelihood of success on their procedural due process claim.[3]

Turning to irreparable harm, Petitioners argue that element is satisfied by their unconstitutional immigration detention. "'It is well-established that the deprivation of constitutional rights unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). Respondents assert detention alone is not irreparable injury, but they fail to reconcile their supporting authority (an unpublished district court case) with the Ninth Circuit's decision in *Hernandez*. They also suggest there is only a possibility of irreparable harm here, which ignores the fact that Petitioners have already been detained for over a month. Given the Court's finding that Petitioners have shown a likelihood of success on their procedural due process claim coupled with the facts of this case, Petitioners have shown irreparable injury.

---

[3] Because a likelihood of success on one claim is all that is required for issuance of a TRO, the court does not address Petitioners' other claims here. *See Ozkay*, 2020 WL 12764953, at *2.

The remaining factors, the balance of equities and the public interest, merge here because Respondents are government actors. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). In this case, the equities and interests at stake are Petitioners' rights to be free from unconstitutional detention and Respondents' interests in enforcing the immigration laws. Both of these interests are important, but when placed on the scales of justice, Petitioners' interests clearly outweigh Respondents' interests. As the Court has stated in other cases, Respondents are free to enforce the immigration laws, but their means of enforcement must comply with the commands of the Due Process Clause. Issuing the TRO will not remove Respondents' ability to enforce the laws. It will simply require them to comply with the requirements of Due Process before re-detaining noncitizens for the purpose of removal.

## IV.
## CONCLUSION

After weighing the *Winter* factors, the Court grants Petitioners' motion. Respondents shall release Petitioners immediately, and shall not re-detain Petitioners without first providing a pre-deprivation hearing before a neutral decisionmaker at which Respondents must prove that changed circumstances related to flight risk or danger warrant their re-detention. The parties shall file a status report on or before **December 16, 2025**, indicating whether Petitioners have been released.

**IT IS SO ORDERED**.

Dated: December 12, 2025

Hon. Dana M. Sabraw
United States District Judge