**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

Chancely FANFAN, María MALDONADO CRUZ, and Elesban ANGEL MENDEZ,

Petitioners-Plaintiffs,

v.

Markwayne MULLIN, Secretary of Homeland Security; Christopher J. LAROSE, Warden, Otay Mesa Detention Center; Daniel A BRIGHTMAN, Field Office Director, San Diego Field Office, United States Immigration and Customs Enforcement; Todd M. LYONS, Acting Director, United States Immigration and Customs Enforcement; Todd BLANCHE, Acting Attorney General, *in their official capacities*,

Respondents-Defendants.

Case No.: 25-cv-3291-DMS-BJW

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

Before this Court is Defendants' Motion to Dismiss Plaintiffs' Class Complaint and Petition. For the reasons stated below, this Court denies Defendants' motion.

## I.

## BACKGROUND

Plaintiff Chancely Fanfan is a citizen of Haiti who presented at a port of entry for his CBP One appointment on October 21, 2024. (Compl. ¶¶ 44, 46, ECF No. 1.) After inspection, DHS released Mr. Fanfan on parole with a Notice to Appear ("NTA") in immigration court on January 16, 2025. (*Id.* ¶ 47; Resp'ts' Opp'n, Ex. 2, ECF No. 7-2.) On January 17, 2025, DHS moved to dismiss the immigration proceedings against Mr. Fanfan. (Respondents' Opp'n, Ex. 4, ECF No. 7-4.) On May 28, 2025, DHS issued another NTA to Mr. Fanfan ordering him to appear in immigration court on June 30, 2025. (Resp'ts' Opp'n, Ex. 3, ECF No. 7-3.) It appears that hearing may have been continued to October 20, 2025. According to Plaintiffs, about a week before that date, Mr. Fanfan received a letter from DHS in the mail instructing him to attend a check-in with ICE immediately following his court hearing. (Compl. ¶ 50.) Mr. Fanfan attended his court hearing and thereafter reported to ICE for his check-in where he was detained by ICE agents. (*Id.* ¶¶ 51–53.) Mr. Fanfan was then transferred to Otay Mesa Detention Center ("OMDC"), where he remained in custody at the time Plaintiffs filed this action. (*Id.* ¶ 58.)

Plaintiff Maria Maldonado Cruz is a citizen of Honduras. (*Id.* ¶ 61.) She entered the United States with her child on August 15, 2019, where she was detained by Border Patrol agents. (Resp'ts' Opp'n, Ex. 6, ECF No. 7-6.) During inspection, Ms. Cruz stated she had a fear of returning to her home country. (*Id.*) She was processed for removal proceedings and then released from custody with an NTA. (Compl. ¶ 63.) DHS issued a subsequent NTA on September 3, 2019, ordering Ms. Cruz to appear in immigration court on January 15, 2020, which she did. (Resp'ts' Opp'n, Ex. 7, ECF No. 7-7; Compl. ¶ 68.) On April 12, 2022, the immigration judge administratively closed Ms. Cruz's immigration case, (Resp'ts' Opp'n, Ex. 8, ECF No. 7-8), but Ms. Cruz continued to appear at subsequent ICE check-ins. (Compl. ¶ 69.) On July 3, 2025, DHS moved to recalendar Ms. Cruz's case, which the immigration judge granted. (Resp'ts' Opp'n, Ex. 9, ECF No. 7-9.) After inadvertently missing an ICE check-in on October 2, 2025, Ms. Cruz and her attorney

reported to ICE on October 15, 2025, where Ms. Cruz was detained. (Compl. ¶¶ 74–79.) She was transferred to OMDC, where she remained in custody at the time Plaintiffs filed this action. (*Id.* ¶ 80.)

Plaintiff Elesban Angel Mendez is a citizen of Mexico. (Resp'ts' Opp'n, Ex. 11, ECF No. 7-11.) He entered the United States on July 16, 2006, and has lived here since then. (*Id.*; Compl. ¶ 85.) On September 21, 2014, Mr. Mendez was arrested for driving under the influence. (Compl. ¶ 86.) Soon after, he was taken into ICE custody. (*Id.*) The next day ICE released Mr. Mendez on an order of release on his own recognizance and with an NTA ordering him to appear in immigration court at a later date. (*Id.*) Approximately two years later, Mr. Mendez's immigration case was administratively closed. (Resp'ts' Opp'n, Ex. 12, ECF No. 7-12.) In July 2025, DHS moved to recalendar Mr. Mendez's case, and the immigration judge granted that motion. (Resp'ts' Opp'n, Ex. 13, ECF No. 7-13.) Subsequently, Mr. Mendez received a letter instructing him to appear for an ICE check-in on October 14, 2025. (Compl. ¶ 90.) Mr. Mendez appeared for that check-in where he was detained. (*Id.* ¶ 91.) Mr. Mendez was subsequently transferred to OMDC, where he remained in custody at the time this action was filed. (*Id.* ¶ 93.)

Plaintiffs allege that their re-detentions were part of a broader practice by Defendants. According to the Complaint, since about October 2025, ICE has been summoning individuals to "check-ins" at the federal building at 880 Front Street in San Diego. (*Id.* at ¶¶ 23–27.) At those check-ins, ICE routinely arrests individuals who have been previously deemed fit for release from DHS custody without affording them a hearing to determine whether changed circumstances related to flight risk or danger justify their re-detention. (*Id.* at ¶¶ 5, 26–29.) Plaintiffs allege that ICE's San Diego Field Office has adopted a policy under which it claims authority to arrest and detain all noncitizens it alleges are not lawfully present, without regard to whether they are a flight risk or danger, (*id.* at ¶¶ 120, 156), a departure from DHS's prior practice of re-arresting previously released individuals only after a material change in circumstances. (*Id.* at ¶ 37, 116.) According to Plaintiffs, the number of individuals with ongoing removal proceedings

whom ICE has arrested at check-ins in San Diego despite having previously deemed them fit for release "is certainly in the dozens, and likely exceeds 100." (*Id.* at ¶¶ 42–43.) Plaintiffs also allege that, after their arrests, ICE held them for days in the basement of 880 Front Street, where they "were forced to endure deplorable conditions," before transferring them to OMDC. (*Id.* at ¶¶ 6–7.)

On November 25, 2025, Plaintiffs filed the present Class Complaint and Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.[1] The Complaint alleges five claims for relief: (1) Violation of the Fifth Amendment Due Process Clause (substantive due process), (2) violation of the Fifth Amendment Due Process Clause (procedural due process), (3) violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a), (4) violation of the Administrative Procedure Act ("APA") (unlawful agency action), 5 U.S.C. § 706(2), and (5) violation of the APA (arbitrary and capricious agency action). Plaintiffs requested that this Court issue a writ of habeas corpus requiring Defendants to release Plaintiffs and issue an injunction preventing Defendants from re-detaining Plaintiffs "without a hearing at which Respondents prove changed circumstances regarding their dangerousness or risk of flight warrant their detention[.]" (Compl. 30.) On behalf of the putative class, Plaintiffs seek a declaration that Plaintiffs' and class members' detention violates the Due Process Clause, the INA, and the APA, and an order setting aside Defendants' practice under 5 U.S.C. § 706(2); the Complaint does not request injunctive relief on behalf of the class. (*See id.*)

The following day, Plaintiffs moved ex parte for a temporary restraining order ("TRO") requiring their immediate release and enjoining Defendants from re-detaining them without a pre-deprivation hearing. (ECF No. 3.) This Court granted the motion on

---

[1] Plaintiffs seek to represent a class of "[n]oncitizens with pending INA 240 removal proceedings who have been or will be re-detained in the Southern District of California while appearing at an ICE 'check-in' or appointment; who DHS previously released from custody; and for whom ICE has not conducted a pre-deprivation hearing to determine whether material changes in circumstances justify re-detention." (Compl. ¶ 128.) Plaintiffs' motion for provisional class certification remains pending before this Court.

December 12, 2025. (ECF No. 13.) Defendants released Plaintiffs from custody that day. (Joint Status Report, ECF No. 14.) The TRO has since expired, and Plaintiffs did not move to extend it or seek a preliminary injunction. (*See* Def.'s Mot. Dismiss 8.) Plaintiffs remain at liberty subject to continued ICE check-ins, and their removal proceedings under 8 U.S.C. § 1229a remain pending before the San Diego Immigration Court. (Decl. Chancely Fanfan ¶¶ 3, 7, ECF No. 17-1; Decl. Maria Maldonado Cruz ¶¶ 3, 8, ECF No. 17-2; Decl. Elesban Angel Mendez ¶¶ 2, 7, ECF No. 17-3; Def.'s Mot. Dismiss 2.)

On February 25, 2026, Plaintiffs moved for provisional class certification and for a class-wide order under 5 U.S.C. § 705 postponing the effective date of the alleged re-detention policy pending the conclusion of this litigation. (ECF Nos. 17, 18.) Defendants filed oppositions to both motions on April 10, 2026. (ECF Nos. 24, 25.) Both motions remain pending before this Court.

That same day, Defendants filed the present Motion to Dismiss Plaintiffs' Class Complaint and Petition under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 23.) Plaintiffs have filed an opposition and multiple notices of supplemental authority. (ECF Nos. 30, 32, 33, 35.) This Court found the motion suitable for decision without oral argument and vacated the hearing. (ECF No. 34.)

## II.

## LEGAL STANDARD

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenge subject-matter jurisdiction on facial or factual grounds. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A facial challenge accepts the truth of the plaintiff's allegations but asserts that they are insufficient to establish jurisdiction." *E.g.*, *Lee v. Garland*, No. 22-CV-176 TWR (AHG), 2022 WL 14890203, at *2 (S.D. Cal. Oct. 25, 2022) (citations omitted). Where, as here, the defendant brings a facial challenge, the court must accept the plaintiff's allegations as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *id.* at *2 (citations omitted).

Motions under Federal Rule of Civil Procedure 12(b)(6) are brought for failure to state a claim upon which relief can be granted. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court established a more stringent standard of review for 12(b)(6) motions. To survive a motion to dismiss under this new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). In *Iqbal*, the Court began this task "by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 680. It then considered "the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.

## III.

## ANALYSIS

### A. Justiciability

Defendants first argue that Plaintiffs' claims are nonjusticiable on standing, ripeness, and mootness grounds. For the reasons stated below, this Court disagrees.

#### 1. Standing

Defendants argue that Plaintiffs lack Article III standing to bring their claim. Article III of the Constitution requires courts to adjudicate only actual cases or controversies. *See* U.S. Const. art. III, § 2, cl. 1. "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact

that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "When evaluating whether [the standing] elements are present, we must look at the facts as they exist at the time the complaint was filed." *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1047 (9th Cir. 2014). Plaintiffs have satisfied the requirements of Article III standing here.

Plaintiffs filed their Complaint on November 25, 2025. (Compl. 31.) At that time, Plaintiffs alleged they were suffering an injury in fact which was concrete, particularized, and actual—i.e., their ongoing unlawful detention by Defendants. (*See id.* at ¶ 1.) This injury was fairly traceable to Defendants' challenged action, as Plaintiffs directly challenged their allegedly unlawful detentions. (*See id.* at ¶ 9.) Similarly, it was likely that a favorable decision ordering Plaintiffs' release and holding Defendants' policy unlawful would redress Plaintiffs' alleged injury. (*See id.* at 30.) Therefore, this Court finds that Plaintiffs have Article III standing. *See Hernandez v. Lynch*, No. EDCV1600620JGBKKX, 2016 WL 7116611, at *12 (C.D. Cal. Nov. 10, 2016) (holding same where Government argued plaintiff lacked standing due to having been released from ICE custody).

Defendants argue that Plaintiffs lack standing because "[a]ll are presently at liberty." (Def.'s Mot. Dismiss 6.) But whether all Plaintiffs are *presently* at liberty is irrelevant to the facts that existed at the time the Complaint was filed. *See Slayman*, 765 F.3d at 1047. Similarly, Defendants mischaracterize the relevant injury for standing purposes as Plaintiffs' "purely . . . prospective fear that DHS may re-detain them at some future time pursuant to an alleged 'Re-Detention Policy.'" (Def.'s Mot. Dismiss 6.) But the relevant injury is that which existed at the time Plaintiffs' Complaint was filed (i.e., their alleged unlawful detention). *See Slayman*, 765 F.3d at 1047. "Defendants' arguments are more properly raised under the mootness doctrine," discussed below. *See Hernandez*, 2016 WL 7116611, at *12.

**2. Ripeness**

"Article III's ripeness doctrine is designed to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Flaxman v. Ferguson*, 151 F.4th 1178, 1184 (9th Cir. 2025) (citation omitted). The central inquiry "is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Richardson v. City & Cnty. of Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1997) (citation omitted). Like standing, "ripeness is determined at the time of the filing of the complaint." *E.g.*, *Sierra Club v. Dombeck*, 161 F. Supp. 2d 1052, 1062 (D. Ariz. 2001) (citing *Bradley v. Work*, 916 F.Supp. 1446, 1464 (S.D. Ind. 1996); *see also Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (citing Gene R. Nichol, Jr., *Ripeness and the Constitution,* 54 U. Chi. L. Rev. 153, 172 (1987)) ("[T]he ripeness inquiry merges almost completely with standing."); *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 839 (9th Cir. 2024) (quoting *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022)) ("In many cases, the constitutional component of ripeness 'is synonymous with the injury-in-fact prong of the standing inquiry.'"). Accordingly, "[e]vents that occur after a suit is filed may moot the action, but the doctrine of ripeness is not affected by such subsequent events." *E.g.*, *Brown v. Jacobsen*, 345 F.R.D. 490, 493 (D. Mont. 2022) (citing *Democratic Nat'l Comm. v. Watada*, 198 F. Supp. 2d 1193, 1197 (D. Haw. 2002)).

Defendants argue that "[f]or the same reasons Plaintiffs lack standing, their claims are not ripe." For the same reasons that Plaintiffs have standing, this Court disagrees. At the time Plaintiffs filed their Complaint, they were allegedly suffering an unlawful detention at Defendants' hands. (Compl. ¶¶ 2, 12.) A detention cannot be considered an uncertain or contingent *future* event when, at the time ripeness is determined, the detention is *presently* ongoing. As in this Court's standing analysis above, the fact that today "all three Plaintiffs are at liberty and allege only a fear of future re-detention," (Def.'s Mot. Dismiss 7), is irrelevant to whether ripeness existed at the time Plaintiffs filed their Complaint. *See Brown*, 345 F.R.D. at 493. Defendants' argument sounds in mootness, not

ripeness, just like their standing argument above. *See id.*

The cases Defendants cite in support of their ripeness argument are inapposite. In *Ohio Forestry Ass'n, Inc. v. Sierra Club*, the Supreme Court held that the organizational plaintiffs' claims were unripe in part because "to withhold court consideration at present will not cause the parties significant hardship." 523 U.S. 726, 733 (1998) (citation modified). Similarly, in *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, the Court held that the plaintiffs' claims were unripe in part because they would "suffer no practical harm as a result of" the challenged regulation. 538 U.S. 803, 810 (2003). There's no colorable argument that Plaintiffs' alleged unlawful detention, "during which . . . they were forced to endure deplorable conditions"; "deprived . . . of consistent access to private bathrooms, nutritious food, phones, or medical care"; "forced . . . to spend the night on the floor or in chairs in crowded rooms with extremely cold temperatures and fluorescent lights on at all hours"; "and denied . . . communication with the outside world, including their counsel," caused Plaintiffs no significant hardship or practical harm. (*See Compl.* ¶ 6.)

**3. Mootness**

"Mootness is a jurisdictional issue, and federal courts have no jurisdiction to hear a case that is moot." *Johnson v. Oishi*, 362 F.Supp.3d 843, 848 (E.D. Cal. 2019) (quoting *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003)). "A claim is moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). A party seeking to demonstrate mootness bears a heavy burden. *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1274 (9th Cir. 1998) (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979)). Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, "the courts would be compelled to leave [t]he defendant . . . free to return to his old ways." *Id.* (alteration in original) (quoting *United States v. Concentrated Phosphate Export Ass'n,* 393 U.S. 199, 203 (1968)). Rather, the party seeking to demonstrate mootness must establish both (1) that subsequent events have made it absolutely clear that the allegedly wrongful behavior can't reasonably be expected to

occur and (2) that interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *Id.* (citations omitted). Defendants have not satisfied either prong of this test.

First, Defendants argue that "there is no reasonable expectation that the Plaintiffs will again face re-detention without the pre-deprivation hearing." (Def.'s Mot. Dismiss 8.) But Defendants offer no evidence in support of this assertion. Defendants claim only that Plaintiffs' "deliberate choice" not to seek an extension of this Court's prior TRO or file a motion for preliminary injunction operates as "an implicit concession that their claims of future unlawful detention are moot." (Def.'s Mot. Dismiss 8.) But Defendants cite no case law supporting this proposition, (*see id.*), and this Court has been unable to locate any. And the record shows that Plaintiffs continue to face the same ICE check-ins at which they were first allegedly unlawfully detained. (*E.g.*, Decl. Chancely Fanfan ¶¶ 6–7.) Therefore, it is equally (if not far more) plausible that Plaintiffs maintain a reasonable expectation of re-detention despite having made a strategic litigation choice not to seek further equitable relief. Drawing all reasonable inferences in Plaintiffs' favor, as this Court must, Defendants have thus failed to establish that subsequent events have made it absolutely clear that their allegedly wrongful re-detentions cannot reasonably be expected to occur.

Nor have Defendants shown that interim relief or events have completely and irrevocably eradicated the effects of their alleged violation. Defendants argue that this Court's prior TRO "has already provided the only forward-seeking relief [Plaintiffs] seek, thereby eliminating any ongoing controversy as to their individual claims." (Def.'s Mot. Dismiss 8.) This is inaccurate. Plaintiffs also seek a writ of habeas corpus, declaratory relief, and APA vacatur. (Compl. 30.) This Court has granted no such relief; in fact, Defendants currently oppose Plaintiffs' pending Motion for Class-Wide Order Postponing Effective Date of Agency Action Under 5 U.S.C. 705. Therefore, Defendants have not carried the heavy burden required to demonstrate mootness. *See Min v. Santacruz*, No. 2:25-CV-10971-MEMF-AS, 2025 WL 3764071, at *2 (C.D. Cal. Dec. 23, 2025) (rejecting

identical Government argument); *Yeranosyan v. Janecka*, No. 5:26-CV-01206-CV, 2026 WL 915290, at *2–3 (C.D. Cal. Apr. 3, 2026) (same).

The Supreme Court held similarly in rejecting a mootness argument in *Nielsen v. Preap*. *See* 586 U.S. 392, 403 (2019). In *Nielsen*, a class of aliens challenged their detention under 8 U.S.C. § 1226(c). *Id.* at 400. The Government argued that the case was moot because "by the time of class certification the named plaintiffs had obtained either cancellation of removal or bond hearings." *Id.* at 403. However, the Court held that the case was not moot "because at least one named plaintiff in both cases had obtained release on bond, as opposed to cancellation of removal, and that release had been granted following a preliminary injunction . . . ." *Id.* The Court noted that "[u]nless that preliminary injunction was made permanent and was not disturbed on appeal, these individuals faced the threat of re-arrest and mandatory detention." *Id.* Here, too, Plaintiffs' release was granted only following interim relief (this Court's prior TRO). (*See* Def.'s Mot. Dismiss 4.) Like in *Nielsen*, that interim relief was not permanent; this Court's TRO is now long expired, leaving Plaintiffs facing the threat of re-arrest and detention at their ICE check-ins. Therefore, Plaintiffs maintain a live claim.

Even if Defendants had met their burden to show that Plaintiffs' claims were moot, Plaintiffs' claims would be subject to a mootness exception for inherently transitory claims. Class actions permit "a named plaintiff whose claim is moot to continue to litigate for a *certified* class so long as class members have a continuing live claim in the case." *E.g.*, 1 Newberg and Rubenstein on Class Actions § 2:13 (6th ed. 2026) (emphasis in original) (citations omitted). However, "some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *E.g.*, *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011) (citation modified). Therefore, "[m]ooting of the named plaintiff's individual claims before class certification might technically moot the action because, in the absence of a properly certified class, no legal entity has a live claim

against the defendant." *E.g.*, 1 Newberg and Rubenstein on Class Actions § 2:13 (6th ed. 2026).

Courts have responded to this challenge "by creating a substantive exception to the mootness doctrine for 'inherently transitory claims' in the class context." *Id.* (citations omitted). An inherently transitory claim is one which "will certainly repeat as to the class, either because the individual could nonetheless suffer repeated harm or because it is certain that other persons similarly situated will have the same complaint." *E.g.*, *Pitts, Inc.*, 653 F.3d at 1090 (citation modified). When plaintiffs allege such claims, "the class certification decision . . . is simply 'related back' to the time of the filing of the complaint with class allegations, at which point the named plaintiff's claims were live." *E.g.*, 1 Newberg and Rubenstein on Class Actions § 2:13 (6th ed. 2026). "The fiction of 'relating back' puts the case in the framework of the named plaintiff's claims becoming moot *after* certification and hence within the familiar doctrinal setting that enables the mooted named plaintiff to continue pursuing the class's claims." *Id.* (emphasis in original). "Application of the relation back doctrine in this context thus avoids the spectre of plaintiffs filing lawsuit after lawsuit, only to see their claims mooted before they can be resolved." *Pitts*, 653 F.3d at 1090.

Courts regularly apply the inherently transitory exception in cases challenging immigration policies because an individual's immigration detention might expire before class certification, but it is certain that other persons similarly situated will have the same complaint. For example, in *Nielsen*, discussed above, the Supreme Court held that even if the plaintiff's claims *had* been moot at class certification, the inherently transitory exception would apply, as "the harms alleged are transitory enough to elude review." 586 U.S. at 403. This Court finds that *Nielsen* controls here, and the exception applies. While the named plaintiffs' detention may be over for now, "it is certain that other persons similarly situated will have the same complaint." *See Pitts*, 653 F.3d at 1090 (citation modified); *see also Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 797 (9th Cir. 2020) (affirming exception applied to challenges to immigration detainers);

*Hernandez v. Lynch*, No. EDCV1600620JGBKKX, 2016 WL 7116611, at *13 (C.D. Cal. Nov. 10, 2016) (applying exception to challenge to immigration bond practices); *Doe v. Wolf*, 424 F. Supp. 3d 1028, 1039 (S.D. Cal. 2020) (applying exception to challenges to denial of access to counsel while in immigration detention).

Defendants cite *Sosna v. Iowa* for the proposition that "because no class has been certified, class allegations cannot preserve jurisdiction." (Def.'s Mot. Dismiss 8 (citing 419 U.S. 393, 399–402 (1975)). But *Sosna* says the opposite. Like the cases discussed above, *Sosna* recognized that there may be times when, as here, "the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion." *See* 419 U.S. at 402 n.11. In such circumstances, the Supreme Court acknowledged that the certification might be "said to 'relate back' to the filing of the complaint," especially if, as here, plaintiffs accurately claimed "that otherwise the issue would evade review." *See id.*

For the reasons stated above, this Court declines to dismiss Plaintiffs' claims on mootness grounds.

**B. Bars to Judicial Review Under 8 U.S.C. § 1252**

Defendants next argue that 8 U.S.C. §§ 1252(b)(9), (g), (e)(3), and (f)(1) each "independently foreclose this Court's jurisdiction over Plaintiffs' claims." (*See* Def.'s Mot. Dismiss 8.) This Court disagrees. This Court has already rejected the argument that §§ 1252(b)(9) and (g) deprive this Court of jurisdiction several times, including in this very case. (Order Granting Pet'r's Ex Parte Mot. TRO 6–7.) As before, Defendants "offer no argument or authority warranting departure from the Court's previous orders, and thus the Court stands on its previous decisions rejecting these arguments." (*See id.*) This Court thus turns to the § 1252(e)(3) argument.

Section 1252(e)(3) provides that judicial review of determinations under § 1225(b)

> and its implementation is available . . . in the United States District Court for the District of Columbia, but shall be limited to determinations of--
> (i) whether such section, or any regulation issued to implement such section, is constitutional; or

> (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued . . . to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

Defendants thus argue that jurisdiction over Plaintiffs' claims lies exclusively in the D.C. District Court. But § 1252(e)(3) applies only to determinations "made in the implementation of the expedited removal provisions of the INA." *See O.A. v. Trump*, 404 F. Supp. 3d 109, 138–41 (D.D.C. 2019). For example, in *Mendoza-Linares v. Garland*, the Ninth Circuit considered whether it could transfer an alien's challenge to an asylum regulation to the D.C. district court under § 1252(e)(3). 51 F.4th 1146, 1156–57 (9th Cir. 2022). The panel first noted that § 1252(e) "*only* authorizes two limited forms of judicial review *of matters concerning expedited removal*." *Id.* at 1156 (emphasis added). The panel then held that a regulation that is not "'entirely linked' to the expedited removal process . . . is not within the exclusive jurisdiction conferred on the D.C. district court under § 242(e)(3)(A)." *Id.* at 1157 (quoting *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 666–67 (9th Cir. 2021), *overruled on other grounds by Arizona All. for Retired Americans v. Mayes*, No. 22-16490, 2026 WL 2277101 (9th Cir. Aug. 7, 2026)). The plaintiff in *Mendoza-Linares* challenged a policy that was "contained in separate regulations that govern asylum more generally and not merely in the expedited removal process." *Id.* Accordingly, the panel held that "the exception in § 242(e) permitting challenges in the D.C. district court cannot apply here." *Id.*

*Mendoza-Linares* controls here. Defendants concede that "Plaintiffs . . . are presently in removal proceedings under 8 U.S.C. § 1229a . . . ." (Def.'s Mot. Dismiss 2.) As Plaintiffs are in removal proceedings under § 1229a, not expedited removal proceedings under § 1225(b)(1), § 1252(e)(3) does not apply.[2] *See Mendoza-Linares*, 51 F.4th at 1156–

[2] The parties dispute whether putative class members are detained under § 1225(b)(2). (Pl.'s Opp. Def.'s Mot. Dismiss 13.) This distinction makes no difference to this Court's analysis; in either case, § 1225(b)(1) would not apply, so § 1252(e)(3) would not either.

57. Plaintiffs cannot be challenging a policy "entirely linked to the expedited removal process," because Plaintiffs are in a different removal process altogether. *See id.* at 1157 (citation modified); *see also O.A.*, 404 F. Supp. 3d at 138–41 ("§ 1252(e)(3) is about challenges to expedited removal orders and the implementation of the expedited removal provisions . . . . This case, in contrast, presents neither a challenge to a removal order nor a challenge to the statutory or regulatory system for expedited removal.").

The cases Defendant cites in support do not counsel otherwise. *M.M.V. v. Garland* held only that § 1252(e)(3) applied to challenges to "alleged policies on how asylum officers conduct interviews *in expedited-removal proceedings*"; it did not extend § 1252(e)(3) beyond the expedited removal context. *See* 1 F.4th 1100, 1104 (D.C. Cir. 2021) (emphasis added). So, too, with *Am. Immigr. Laws. Ass'n v. Reno*, which considered only third-party standing to challenge "the expedited removal system." 199 F.3d 1352, 1354 (D.C. Cir. 2000). Therefore, this Court finds that § 1252(e)(3) does not strip its jurisdiction here. *See Innovation L. Lab v. Nielsen, vacated as moot sub nom. Innovation L. Lab v. Mayorkas,* No. 19-CV-00807-RS, 2021 WL 12394205 (N.D. Cal. Aug. 6, 2021) ("[T]he mere fact that § 1252(e)(3) fails to state '1225(b)(1)' instead of only '1225(b)' is too thin a reed on which to conclude that jurisdiction of this action lies exclusively in [D.D.C.]").

Defendants also argue that "Congress has withdrawn jurisdiction for the class-wide relief Plaintiffs seek" via § 1252(f)(1). "The Supreme Court has long emphasized the narrowness of § 1252(f)(1), stating that 'by its plain terms, and even by its title, Section 1252(f) is nothing more or less than a limit on injunctive relief.'" *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 989–90 (9th Cir. 2025), *overruled on other grounds by Arizona All. for Retired Americans*, 186 F.4th 622. Plaintiffs do not seek any classwide injunctive relief; they seek APA vacatur and declaratory relief. (*See* Compl. 30.) Under binding Ninth Circuit precedent, Section 1252(f)(1) poses no obstacle to such relief. *See Immigrant Defs. L. Ctr.*, 145 F.4th at 989–90 (discussing APA remedies under § 1252(f)(1)); *Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1018–19 (9th Cir. 2025) (same); *Mullin v. Al Otro Lado*, 146 S.

Ct. 2079, 2097–99 (2026) (Thomas, J., concurring) (outlining Ninth Circuit approach to declaratory relief under § 1252(f)(1)).

**C. Whether 8 U.S.C. § 1225(b)(2) Provides a Basis for Detention of Non-Admitted Aliens**

Defendants next argue that "all non-admitted aliens (regardless of how long they have been in the country) are 'applicants for admission' within the meaning of § 1225(a)(1) and are thus subject to mandatory detention under § 1225(b)(2)." (Def.'s Mot. Dismiss 11–17.) Defendants submitted their motion to dismiss on April 10, 2026, three months before the Ninth Circuit's recent decision in *Rodriguez Vazquez v. Bostock* rejected this exact argument. (*Compare* Def.'s Mot. Dismiss 12 ("[I]ndividuals who have not been admitted remain 'applicants for admission,' and their detention continues to fall under § 1225, as opposed to § 1226") *with* 183 F.4th 1160, 1165 (9th Cir. 2026) ("[A]liens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A).").  Nothing remains of Defendants' argument post-*Rodrigo Vazquez*, which is binding on this Court.

**D. Final Agency Action**

Defendants next argue that Plaintiffs failed to adequately plead a reviewable agency action under the APA.[3] For the reasons stated below, this Court disagrees.[4]

---

[3] Here and elsewhere in their brief, Defendants attempt to "incorporate" arguments from their oppositions to Plaintiffs' motions to stay agency action and obtain provisional class certification. (Def.'s Mot. Dismiss 17, 19–20.) But this tactic violates the Local Civil Rules. First, Rule 7.1(h) limits briefs in support of motions to 25 pages. The various arguments Defendants seek to incorporate would increase their brief length well past that. But Defendants have not sought this Court's leave to exceed 25 pages. *See id.* Second, Rule 7.1(f)(2) requires "copies of all documentary evidence which the movant intends to submit in support of the motion, or other request for ruling by the Court" to "be served and filed with the motion." Incorporating Defendants' arguments would unfairly disadvantage Plaintiffs, who complied with the Rules. Accordingly, this Court declines to waive the Rules' applicability here in the interest of justice. *See* S.D. Cal. Civ. R. 1.1(d). This Court will address Defendants' arguments in its forthcoming rulings on their corresponding motions.

[4] Defendants also argue that, even assuming Plaintiffs have adequately pleaded a reviewable agency action under the APA, "§ 1225(b)(2) provides a lawful basis for mandatory detention of non-admitted aliens."

Under 5 U.S.C. § 704, agency action is only "subject to judicial review" if it is "made reviewable by statute" or "final." "Agency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. 551(13). This "broad[]" definition "is meant to cover comprehensively every manner in which an agency may exercise its power." *San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 575–576 (9th Cir. 2019) (quoting *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 478 (2001)).

Accordingly, agency action "need not be in writing to be final and judicially reviewable." *Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168, 1206 (S.D. Cal. 2019) (citation omitted); *see also Osny Sorto-vasquez Kidd v. Mayorkas*, No. 2:20-CV-03512-ODW (JPRX), 2021 WL 1612087, at *8 (C.D. Cal. Apr. 26, 2021) (same); *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 138–39 (D.D.C. 2018) (same); *Am. Ass'n of Univ. Professors v. Trump*, 815 F. Supp. 3d 907, 966 (N.D. Cal. 2025) (same). "A contrary rule 'would allow an agency to shield its decisions from judicial review simply by refusing to put those decisions in writing.'" *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015) (quoting *Grand Canyon Trust v. Pub. Serv. Co. of N.M.*, 283 F.Supp.2d 1249, 1252 (D.N.M. 2003)). "Nor does the APA's text require that plaintiffs prove the existence of such action through direct rather than circumstantial evidence." *Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 1022 (N.D. Cal. 2025) (citing *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 166 (E.D.N.Y. 2018)). A defendant agency's behavior is relevant to inferring a policy's existence. *Id.*

Agency action is final where (1) "it marks the consummation of the agency's decisionmaking process," rather than being "of a merely tentative or interlocutory nature"; and (2) the action is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). The

---

As outlined in Part III(C), *supra*, nothing remains of this argument following the Ninth Circuit's recent decision in *Rodriguez Vazquez v. Bostock*. *See* 183 F.4th 1160 (9th Cir. 2026).

Supreme Court has instructed "that finality be interpreted pragmatically." *R.I.L-R*, 80 F. Supp. 3d at 184 (quoting *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239 (1980)). Accordingly, the Ninth Circuit asks "whether the action amounts to a definitive statement of the agency's position or has a direct and immediate effect on the day-to-day operations of the subject party," focusing on "the practical and legal effects of the agency action." *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (citation modified).

Plaintiffs have adequately pleaded final agency action here. As outlined above, final action can be inferred from a defendant agency's behavior. Plaintiffs allege that "[b]eginning in 2025, Defendants began re-detaining individuals without assessing whether material changed circumstances related to flight risk or danger justify re-detention." (Pl.'s Opp. Def.'s Mot. Dismiss 23; Compl. ¶¶ 29, 120.) This represented a reversal of "decades-old agency practices and policies." (Compl. ¶¶ 7, 37; *see also Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981) ("[W]here a previous bond determination has been made by an immigration judge, no change should be made by a District Director absent a change of circumstance . . . ."); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019) (quoting *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017)) ("In practice, the DHS re-arrests individuals only after a 'material' change in circumstances."); *Garro Pinchi*, 813 F. Supp. 3d at 1021–22 (outlining extensive evidence that novel re-detention practice occurred due to top-down guidance)). Defendants' policy shift contributed to a surge in individuals "arrested at check-ins and detained in San Diego despite having previously" been deemed fit for release. (Compl. ¶¶ 42–43.)

It is plausible that these facts represent a deliberate policy shift and the consummation of Defendants' decisionmaking process. *See Garro Pinchi*, 813 F. Supp. 3d at 1021 ("[I]t is beyond belief that DHS officers would abruptly and uniformly depart from decades-long re-detention practices in such a novel way absent DHS's authorization or instruction to do so."). And the alleged agency action determined Plaintiffs' rights and obligations and carried legal consequences; indeed, Plaintiffs allege that Defendants'

action led to their detention in squalid conditions. (*See* Compl.) Therefore, Plaintiffs plausibly allege final agency action reviewable under the APA.

**E. Failure to State a Due Process Claim**

The Fifth Amendment's Due Process Clause provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." The Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Plaintiffs allege violations of both procedural and substantive due process. (Compl. ¶¶ 133–47.) Defendants argue that Plaintiffs fail to state a claim under either theory. For the reasons stated below, this Court finds that Plaintiffs have adequately pleaded violations under both theories.

**1. Failure to State a Procedural Due Process Claim**

Plaintiffs have adequately pleaded a procedural due process violation. As outlined in this Court's previous order granting Plaintiffs' motion for a TRO, courts evaluate procedural due process violations using the three-part balancing test of *Matthews v. Eldridge*. 424 U.S. 319, 335 (1976). Under *Matthews*, courts must consider (1) the private interest that the official action will affect; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.*

On the first factor, Plaintiffs argue that Defendants' alleged re-detention policy implicates their right to be free from government imprisonment. (Compl. ¶ 142.) In *Zadvydas v. Davis*, the Supreme Court stated "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." 533 U.S. 678, 690 (2001). Further, "[e]ven when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she

violates the conditions of her release." *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1082 (N.D. Cal. 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Conditional release is valuable and must be seen as within the protection of the Due Process Clause." *Id.* (citation modified). District courts in the Ninth Circuit "consistently hold that if DHS has released a noncitizen pending civil removal proceedings, the noncitizen has a protected liberty interest in remaining out of immigration custody." *Id.* This Court agrees and accordingly rejects Defendants' argument that "no protected liberty interest is established." (*See* Def.'s Mot. Dismiss 18.) This factor therefore weighs in favor of Plaintiffs.

On the second factor, Plaintiffs contend there is a high risk of erroneous deprivation of this liberty interest when noncitizens are re-detained without a custody or bond hearing. (Compl. ¶ 145.) They also argue that requiring the Government to conduct a hearing before subjecting noncitizens to re-detention would guard significantly against that risk. Several district courts in California agree with Petitioners, *see, e.g., id.* at *11 (citing cases), as does this Court. Therefore, this factor also weighs in favor of Plaintiffs.

On the third factor, Petitioners assert there is no countervailing government interest justifying their re-detention where they present no flight risk or danger to the community. (Compl. ¶ 108.) "The government may have 'a strong interest' in detaining noncitizens during the pendency of removal proceedings as needed to 'protect[] the public from dangerous criminal aliens,' or to prevent flight and thereby 'increase the chance that . . . the aliens will be successfully removed.'" *Pablo Sequen v. Kaiser*, 800 F. Supp. 3d 998, 1013 (N.D. Cal. 2025) (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). However, when the Government has previously decided to release a noncitizen and there is no evidence in the record of any changed circumstance that might have caused the Government to reconsider its initial decision, courts have found the Government's interest in re-detention is low. *Doe v. Chestnut*, No. 1:25-cv-01372- CDB (HC), 2025 WL 3295154, at *10 (E.D. Cal. Nov. 26, 2025) (citations omitted).

Defendants' interest is even lower now than when this Court granted Plaintiffs' motion for a TRO. As discussed above, the Ninth Circuit's recent decision in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), established that detention is not "expressly mandated by statute." (*Contra* Def.'s Mot. Dismiss 19.) Finally, the fiscal and administrative burdens that the additional procedural requirement would entail are also in Plaintiffs' favor. The "minimal" effort and cost required to provide Plaintiffs with hearings, *see Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025), pales in comparison to the "staggering" costs to the public of immigration detention. *See Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017).

Defendants argue that Plaintiffs do not "plausibly allege that the decision to effectuate or resume custody under § 1225(b)(2)(A) was undertaken for any impermissible or punitive purpose." (*Id.* at 18–19.) But *Matthews*'s third prong does not require plaintiffs to demonstrate impermissible or punitive purpose; it only requires courts to balance the Government's interest. *See, e.g.*, *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218–19 (S.D.N.Y. 2025) (holding that Government failed to show *significant* interest in continuing detention of habeas petitioner who wasn't danger to community or flight risk); *Sershen v. Cholish*, No. CIV.A. 3:07-CV-1011, 2007 WL 3146357, at *14–15 (M.D. Pa. Oct. 26, 2007) (upholding procedural due process claim against motion to dismiss where government's interest was very important but cost of additional safeguards was low).

Therefore, all three *Matthews* factors weigh in favor of Plaintiffs. This Court thus finds that Plaintiffs have adequately pleaded a procedural due process claim.

**2. Failure to State a Substantive Due Process Claim**

Defendants also argue that Plaintiffs fail to adequately plead a substantive due process violation. "[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (citation modified).

Defendants first offer the conclusory assertion that "[c]ivil immigration detention is a longstanding and constitutionally permissible component of the removal process."

(Def.'s Mot. Dismiss 18.) Civil immigration detention may be longstanding, but "[s]tanding alone, historical patterns cannot justify contemporary violations of constitutional guarantees." *Cf. Marsh v. Chambers*, 463 U.S. 783, 790 (1983). Further, Plaintiffs do not challenge the longstanding practice of civil immigration detention writ large; they challenge the re-detention practice here that allegedly began in 2025. (Pl.'s Opp. Def.'s Mot. Dismiss 23; Compl. ¶¶ 29, 120.).

Defendants then argue that "immunity from detention during removal proceedings" and continued release following "a prior discretionary release" are not "deeply rooted in this Nation's history and tradition" and thus do not qualify as "fundamental" rights. (Def.'s Mot. Dismiss 18. (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997).) That may be so, but Defendants' arguments still miss the mark. Governmental action that does not infringe on a fundamental right still violates substantive due process if it is not "rationally related to legitimate government interests." *See, e.g.*, *Gonzalez v. Casey*, No. 3:26-CV-01265-RBM-MMP, 2026 WL 1333767, at *5 (S.D. Cal. May 13, 2026) (quoting *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1085 (9th Cir. 2015)). Specifically, "in the immigration context, due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." *Id.* (citation modified). Here, Plaintiffs allege that the re-detention practice "violates the Due Process Clause *because it is not rationally related to any legitimate government purpose*." (Compl. ¶ 140 (emphasis added).) This claim is plausible because, as outlined above, Plaintiffs allege that they pose no danger or flight risk (and in fact, the Government has already determined they pose no such risk). (*See* Compl. ¶ 115.) Therefore, Plaintiffs have adequately pleaded a substantive due process violation.

**F. Whether Habeas Can Supply the Relief Plaintiffs Seek**

Defendants' final argument is that habeas cannot supply "the kind of programmatic, non-core relief" that Plaintiffs seek. (Def.'s Mot. Dismiss 19.) However, Plaintiffs bring individual habeas claims on their own behalf alongside non-habeas, classwide claims. (*See* Compl. (establishing in caption that Plaintiffs bring class complaint *and* petition for writ

of habeas corpus).) Plaintiffs seek habeas relief on their own behalf and classwide relief on the class's behalf. (*See* Compl. 30 (requesting habeas relief for the named Petitioners only).) Defendants appear to concede that Plaintiffs' individual habeas claims challenging their detention and seeking release from custody fall within the "core" of habeas relief. (*See* Def.'s Mot. Dismiss 19 ("Habeas under 28 U.S.C. § 2241 is, at its 'core,' a vehicle to test the fact or duration of an individual's custody and, if successful, to obtain release . . . ."); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (same)). Even if Defendants are correct that the requested *classwide* relief is non-core, this Court need not split such claims "in contravention of Rules 18 and 20 and the well-established policies served thereby." *See Pablo Sequen v. Kaiser*, 810 F. Supp. 3d 1076, 1082–83 (N.D. Cal. 2025); *Hernandez Roman v. Wolf*, 829 F. App'x 165, 170 (9th Cir. 2020) (affirming jurisdiction over habeas petition brought alongside class complaint seeking declaratory and injunctive relief).

## V.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is hereby denied.

**IT IS SO ORDERED.**

Dated: September 22, 2026

Hon. Dana M. Sabraw
United States District Judge