# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

Chancely FANFAN, María MALDONADO CRUZ, and Elesban ANGEL MENDEZ,

Petitioners-Plaintiffs,

v.

Markwayne MULLIN, Secretary of Homeland Security; Christopher J. LAROSE, Warden, Otay Mesa Detention Center; Daniel A BRIGHTMAN, Field Office Director, San Diego Field Office, United States Immigration and Customs Enforcement; Todd M. LYONS, Acting Director, United States Immigration and Customs Enforcement; Todd BLANCHE, Acting Attorney General, in their official capacities,

Respondents-Defendants.

Case No.: 25-cv-3291-DMS-BJW

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PROVISIONAL CLASS CERTIFICATION**

**[ECF No. 17]**

In this litigation, Plaintiffs challenge Defendants' alleged abrupt departure from a decades-long policy of not re-detaining individuals whom the Department of Homeland Security ("DHS") previously released, absent a finding of material changed circumstances related to flight risk or danger to the community. Plaintiffs claim Defendants have initiated

a new practice and policy of luring noncitizens—who DHS previously released from immigration detention—to "check-ins" or appointments with Immigration and Customs Enforcement ("ICE"), and then re-detaining them when they arrive at their designated check-in or appointment without providing a pre-deprivation hearing to determine whether material changes in circumstances justified their re-detention ("Re-Detention Policy"). Plaintiffs seek to certify a class of noncitizens with pending 8 U.S.C. § 1229a removal proceedings before an immigration judge ("IJ") who have been or will be re-detained in the Southern District of California while appearing at an ICE check-in or appointment; whom DHS previously released from custody; and for whom ICE failed to conduct a pre-deprivation hearing to determine whether material changes in circumstances justified their re-detention. Plaintiffs seek classwide relief under the Administrative Procedure Act ("APA") and the Declaratory Judgment Act through an order setting aside and declaring unlawful Defendants' Re-Detention Policy as violative of the APA and Procedural Due Process under the Fifth Amendment to the United States Constitution.

To determine whether class certification is appropriate, the Court must consider the statutory and constitutional rights applicable to noncitizens who were and will be re-detained in the interior of the United States, primarily under 8 U.S.C. § 1226.[1] Because § 1226(c) provides for mandatory detention for noncitizens who commit certain enumerated crimes and curtails rights that are generally available to noncitizens who are re-detained in the interior of the country under § 1226(a), the Court excises from class

---

[1] In the briefing on the motion, the parties spent considerable time arguing about whether the proposed class includes noncitizens who were or would be detained under 8 U.S.C. § 1225 (mandatory detention framework of noncitizens arriving at the border), § 1226(a) (discretionary detention framework of noncitizens apprehended within the interior), and § 1226(c) (mandatory detention framework for noncitizens who commit qualifying offenses), and how detention under each of those statutes would affect the class certification analysis. However, Plaintiffs maintain the proposed class does not include noncitizens detained under § 1225(b)(1) (expedited removal framework for noncitizens arriving at the border). (*See* Pls.' Reply Defs.' Opp'n 5, 9, ECF No. 27.) And in light of the Ninth Circuit's decision in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026), "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." Thus, the Court focuses its analysis primarily on § 1226.

treatment those individuals who are or will be detained under § 1226(c). With that carveout, the Court certifies for class treatment the balance of the proposed class, for the reasons set forth below.

## I.

## BACKGROUND

Plaintiff Chancely Fanfan is a citizen of Haiti who presented at a port of entry at the U.S./Mexico border for his CBP One appointment on October 21, 2024. (Compl. ¶¶ 44, 46, ECF No. 1.) After inspection, DHS released Mr. Fanfan on parole with a Notice to Appear ("NTA") before an IJ on January 16, 2025. (*Id.* ¶ 47; Resp'ts' Opp'n, Ex. 2, ECF No. 7-2.) On January 17, 2025, DHS moved to dismiss the immigration proceedings against Mr. Fanfan. (Respondents' Opp'n, Ex. 4, ECF No. 7-4.) On May 28, 2025, DHS issued another NTA to Mr. Fanfan ordering him to appear in immigration court on June 30, 2025. (Resp'ts' Opp'n, Ex. 3, ECF No. 7-3.) It appears that hearing may have been continued to October 20, 2025. According to Plaintiffs, about a week before that date, Mr. Fanfan received a letter from DHS in the mail instructing him to attend a check-in with ICE immediately following his court hearing. (Compl. ¶ 50.) Mr. Fanfan attended his court hearing and thereafter reported to ICE for his check-in where he was detained by ICE agents. (*Id.* ¶¶ 51–53.) Mr. Fanfan was then transferred to Otay Mesa Detention Center ("OMDC"), where he remained in custody at the time Plaintiffs filed this action. (*Id.* ¶ 58.)

Plaintiff Maria Maldonado Cruz is a citizen of Honduras. (*Id.* ¶ 61.) She entered the United States with her child between ports of entry on August 15, 2019, where she was detained by Border Patrol agents. (Resp'ts' Opp'n, Ex. 6, ECF No. 7-6.) During inspection, Ms. Cruz stated she had a fear of returning to her home country. (*Id.*) She was then released from custody with an NTA. (Compl. ¶ 63.) DHS issued a subsequent NTA on September 3, 2019, ordering Ms. Cruz to appear in immigration court on January 15, 2020, which she did. (Resp'ts' Opp'n, Ex. 7, ECF No. 7-7; Compl. ¶ 68.) On April 12, 2022, the IJ administratively closed Ms. Cruz's immigration case, (Resp'ts' Opp'n, Ex. 8, ECF No. 7-8), but Ms. Cruz continued to appear at subsequent ICE check-ins. (Compl. ¶

69.) On July 3, 2025, DHS moved to recalendar Ms. Cruz's case, which the IJ granted. (Resp'ts' Opp'n, Ex. 9, ECF No. 7-9.) After inadvertently missing an ICE check-in on October 2, 2025, Ms. Cruz and her attorney reported to ICE on October 15, 2025, where Ms. Cruz was detained. (Compl. ¶¶ 74–79.) She was transferred to OMDC, where she remained in custody at the time Plaintiffs filed this action. (*Id.* ¶ 80.)

Plaintiff Elesban Angel Mendez is a citizen of Mexico. (Resp'ts' Opp'n, Ex. 11, ECF No. 7-11.) He entered the United States on July 16, 2006, apparently undetected, and has lived here since then. (*Id.*; Compl. ¶ 85.) On September 21, 2014, Mr. Mendez was arrested in the interior of the United States for driving under the influence. (Compl. ¶ 86.) Soon after, he was taken into ICE custody. (*Id.*) The next day ICE released Mr. Mendez on an order of release on his own recognizance and with an NTA ordering him to appear in immigration court at a later date. (*Id.*) Approximately two years later, Mr. Mendez's immigration case was administratively closed. (Resp'ts' Opp'n, Ex. 12, ECF No. 7-12.) In July 2025, DHS moved to recalendar Mr. Mendez's case, and the IJ granted that motion. (Resp'ts' Opp'n, Ex. 13, ECF No. 7-13.) Subsequently, Mr. Mendez received a letter instructing him to appear for an ICE check-in on October 14, 2025. (Compl. ¶ 90.) Mr. Mendez appeared for that check-in where he was detained. (*Id.* ¶ 91.) Mr. Mendez was subsequently transferred to OMDC, where he remained in custody at the time this action was filed. (*Id.* ¶ 93.)

Plaintiffs allege that their re-detentions were part of a broader practice by Defendants. According to the Complaint, since about October 2025, ICE has been summoning individuals to "check-ins" at the federal building at 880 Front Street in San Diego. (*Id.* ¶¶ 23–27.) At those check-ins, ICE routinely arrests individuals who have been previously deemed fit for release from DHS custody without affording them a hearing to determine whether changed circumstances related to flight risk or danger justify their re-detention. (*Id.* ¶¶ 5, 26–29.) Plaintiffs allege that ICE's San Diego Field Office has adopted a policy under which it claims authority to arrest and detain all noncitizens it alleges are not lawfully present, without regard to whether they are a flight risk or danger,

(*id.* ¶¶ 120, 156), a departure from DHS's prior practice of re-arresting previously released individuals only after a material change in circumstances. (*Id.* ¶ 37, 116.) According to Plaintiffs, the number of individuals with ongoing removal proceedings whom ICE has arrested at check-ins in San Diego despite having previously deemed them fit for release "is certainly in the dozens, and likely exceeds 100." (*Id.* ¶¶ 42–43.) Plaintiffs also allege that, after their arrests, ICE held them for days in the basement of 880 Front Street, where they "were forced to endure deplorable conditions" before transferring them to OMDC. (*Id.* ¶¶ 6–7.)

On November 25, 2025, Plaintiffs filed the present Class Complaint and Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The Complaint alleges five claims for relief: (1) violation of the Fifth Amendment Due Process Clause (Substantive Due Process), (2) violation of the Fifth Amendment Due Process Clause (Procedural Due Process), (3) violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a), (4) violation of the APA (unlawful agency action contrary to law and constitutional right), 5 U.S.C. § 706(2)(A)–(C), and (5) violation of the APA (arbitrary and capricious agency action). *Id.* § 706(2)(A). Plaintiffs individually requested that the Court issue a writ of habeas corpus requiring Defendants to release Plaintiffs and issue an injunction preventing Defendants from re-detaining Plaintiffs "without a hearing at which Respondents prove changed circumstances regarding their dangerousness or risk of flight warrant their detention[.]" (Compl. 30.) On behalf of the putative class, Plaintiffs seek a declaration that Plaintiffs' and class members' detention violates the Due Process Clause, the INA, and the APA, and an order setting aside Defendants' practice under 5 U.S.C. § 706(2)(A)–(C). Plaintiffs do not request injunctive relief on behalf of the class.

On November 26, 2025, Plaintiffs moved ex parte for a temporary restraining order ("TRO") requiring their immediate release and enjoining Defendants from re-detaining them without a pre-deprivation hearing. (ECF No. 3.) The Court granted the motion on December 12, 2025, stating:

> "[e]ven when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release." *Pablo Sequen v. Albarran*, ___ F.Supp.3d ___, 2025 WL 2935630, at *5 (Oct. 15, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). District courts in the Ninth Circuit "consistently hold that if DHS has released a noncitizen pending civil removal proceedings, the noncitizen has a protected liberty interest in remaining out of immigration custody." *Id.*

(ECF No. 13 at 5.)

Defendants released Plaintiffs from custody that day. (Joint Status Report, ECF No. 14.) The TRO has since expired, and Plaintiffs did not move to extend the TRO or seek a preliminary injunction. (Defs.' Mot. Dismiss 8, ECF No. 23.) Plaintiffs remain at liberty subject to continued ICE check-ins, and their removal proceedings under § 1229a remain pending before the San Diego Immigration Court.[2] (Decl. Chancely Fanfan ¶¶ 3, 7, ECF No. 17-1; Decl. Maria Maldonado Cruz ¶¶ 3, 8, ECF No. 17-2; Decl. Elesban Angel Mendez ¶¶ 2, 7, ECF No. 17-3; Defs.' Mot. Dismiss 2.)

On February 25, 2026, Plaintiffs moved for provisional class certification ("Pls.' Mot.", ECF No. 17) and for classwide relief under the APA, 5 U.S.C. § 705, postponing the effective date of the Re-Detention Policy pending the conclusion of this litigation. (ECF No. 18.) Plaintiffs seek to represent the following class:

> Noncitizens with pending 8 U.S.C. § 1229a removal proceedings who have been or will be re-detained in the Southern District of California while appearing at an ICE "check-in" or appointment; who DHS previously released from custody; and for whom ICE has not conducted a pre-deprivation hearing to determine whether material changes in circumstances justify re-detention.

(Pls.' Mot. 1.)

Defendants filed oppositions to both motions on April 10, 2026. (Defs.' Opp'n Pls.' Mot. Provisional Class Certification ("Defs.' Opp'n"), ECF No. 24; ECF No. 25.)

---

[2] 8 U.S.C. § 1229a—embodied in Section 240 of the INA—governs formal removal proceedings (deportation and inadmissibility hearings) conducted before an IJ.

Plaintiffs filed replies to both motions, multiple notices of supplemental authority, and a notice of supplemental facts. (ECF Nos. 26, 27, 30, 32, 35, 46.) The Court held oral argument on the class certification motion on October 23, 2026. (ECF Nos. 41, 45.) This Order follows. Plaintiffs' motion for classwide relief under the APA is submitted on the briefs and will be addressed in a separate order.

## II.

## LEGAL STANDARD[3]

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). To qualify for the exception to individual litigation, the party seeking class certification must provide facts sufficient to satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1308–09 (9th Cir. 1977). "The Rule 'does not set forth a mere pleading standard.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Dukes*, 564 U.S. at 350). "Rather, a party must not only 'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a). The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* (emphasis in original). Where plaintiffs seek class certification in conjunction

---

[3] Defendants raise jurisdictional and standing arguments that the Court has previously rejected, and again rejects. For example, Defendants argue that 8 U.S.C. §§ 1252(e)(3), (f)(1) strip the Court of jurisdiction. (Defs.' Opp'n 1, 5–10, 13–14, 17.) The Court stands on its previous decision rejecting these arguments. (*See* Order Denying Defs.' Mot. Dismiss 6–7, 15–16, ECF No. 37.) Similarly, Defendants argue that because § 1252(e)(3) applies, § 1252(e)(1)(B) bars class certification. (Defs.' Opp'n 13–14.) But if § 1252(e)(3) does not apply here, neither does § 1252(e)(1)(B). *See Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 1009 (N.D. Cal. 2025) ("[B]ecause § 1252(e)(3) does not govern judicial review of plaintiffs' claims, § 1252(e)(1)(B) does not bar the Court from certifying or granting relief to the proposed class and subclass."). The Court has already determined that § 1252(e)(3) does not apply, as Plaintiffs challenge a generally applicable Re-Detention Policy not limited to the expedited removal process. (Order Denying Defs.' Mot. Dismiss 13–15; *see Mendoza-Linares v. Garland*, 51 F.4th 1146, 1157 (9th Cir. 2022).) Therefore, § 1252(e)(1)(B) presents no obstacle to class certification. *See Garro Pinchi*, 813 F. Supp. 3d at 1009.

with a request for preliminary relief, the Ninth Circuit "ha[s] approved provisional class certification for purposes of preliminary [relief] proceedings." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 n.4 (9th Cir. 2020).

Federal Rule of Civil Procedure 23(a) sets out four requirements for class certification—numerosity, commonality, typicality, and adequacy of representation. A showing that these requirements are met, however, does not warrant class certification. The plaintiff also must show that one of the requirements of Rule 23(b) is met. Here, Plaintiffs assert they meet the requirements of Rule 23(b)(2). Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Because the relief requested in a (b)(2) class is prophylactic, inures to the benefit of each class member, and is based on accused conduct that applies uniformly to the class, notice to absent class members and an opportunity to opt out of the class is not required. *Dukes*, 564 U.S. at 361–62 (noting relief sought in (b)(2) class affects entire class at once and thus class is mandatory with no opt-out opportunity).

The district court must conduct a rigorous analysis to determine whether the prerequisites of Rule 23 have been met. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). It is a well-recognized precept that "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) (quoting *Mercantile Nat'l Bank v. Langdeau*, 371 U.S. 555, 558 (1963)). However, "[a]lthough some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage." *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983) (citation omitted); *see also Nelson v. U.S. Steel Corp.*, 709 F.2d 675, 680 (11th Cir. 1983) (plaintiff's burden "entails more than the simple assertion of [commonality and typicality] but less than a prima facie showing of liability") (citation

omitted). Rather, the court's review of the merits should be limited to those aspects relevant to making the certification decision on an informed basis. *See* Fed. R. Civ. P. 23 advisory committee notes. If a court is not fully satisfied that the requirements of Rule 23(a) and (b) have been met, the court should refuse certification. *Falcon*, 457 U.S. at 161.

## III.
## ANALYSIS

The Court begins with Rule 23(b)(2) because its requirements are not met with respect to noncitizens arrested and detained in the interior of the United States under § 1226(c). Such individuals are subject to more limited rights than putative class members who are detained under § 1226(a), which necessitates excluding the former group from the proposed class.

### A. Rule 23(b)(2)

Plaintiffs must show that at least one of the requirements of Rule 23(b) is met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614–15 (1997). Plaintiffs request certification under Rule 23(b)(2). Under Rule 23(b)(2), class certification may be appropriate where a defendant acted or refused to act in a manner applicable to the class generally, rendering injunctive and declaratory relief appropriate to the class as a whole. The parties agree:

> The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.' In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.

*Dukes*, 564 U.S. at 360 (emphasis in original) (citation omitted).

In *Jennings v. Rodriguez*, the Supreme Court rejected claims that plaintiffs detained under §§ 1225(b), 1226(a), and 1226(c) were *statutorily* entitled to bond hearings. 583 U.S. 281 (2018). The Court remanded to the Ninth Circuit to consider whether class

members were *constitutionally* entitled to bond hearings. The Court further instructed the Ninth Circuit to consider "whether a Rule 23(b)(2) class action continues to be the appropriate vehicle for respondents' claims in light of *Wal–Mart Stores, Inc. v. Dukes*." *Id.* at 313 (citing 564 U.S. 338). The Court observed that the Ninth Circuit had "already acknowledged that some members of the certified class may not be entitled to bond hearings as a constitutional matter." *Id.* (citation omitted). Therefore, the Court reasoned, "it may no longer be true that the complained-of 'conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Id.* (quoting *Dukes*, 564 U.S. at 360).

Here, Plaintiffs' certification motion concerns only their Fifth Amendment Procedural Due Process and APA claims. (*See* Pls.' Mot. 14.) These claims are addressed in turn.

**1. Procedural Due Process**

Plaintiffs argue that class members' detention violates Procedural Due Process because Defendants re-detained previously released class members "without providing a pre-deprivation hearing to determine whether the re-detention is warranted." (Pls.' Mot. 14; *see also* Compl. ¶ 147 (alleging same).) However, Defendants' practice cannot be declared unlawful "only as to all of the class members or as to none of them," *see Jennings*, 583 U.S. at 313 (citation omitted), because the class includes members subject to mandatory detention under § 1226(c), which requires the Government to detain aliens who have committed a crime specified in the statute for the duration of their removal proceedings. Specifically, courts have held that where noncitizens are detained, released, and then become subject to § 1226(c) for committing a specified new law violation, they have no Procedural Due Process right to an individualized determination of danger or flight risk before re-detention. *E.g.*, *Lopez Arevalo v. Warden*, No. 1:26-CV-04853-DAD-CKD, 2026 WL 2517498, at *4 (E.D. Cal. Aug. 26, 2026); *Mandhan v. Mullin*, No. 1:26-CV-04809 (EJD), 2026 WL 2363531, at *2 (E.D. Cal. Aug. 13, 2026); *cf. Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 1035 (N.D. Cal. 2025) (citation modified) ("Noncitizens

convicted of particular crimes described in § 1226(c) may reasonably be presumed to pose a risk of flight or a danger to the community."). The Court finds these cases persuasive.

Individuals subject to § 1226(c) traditionally have received only *post*-deprivation process. Specifically, they have a right to notice of the reason for detention and a hearing before an IJ to contest whether they are subject to mandatory detention. *Lopez Arevalo*, 2026 WL 2517498, at *4 (citing *In Re Kotliar*, 24 I. & N. Dec. 124, 127 (BIA 2007)). They are also entitled to a so-called "*Joseph* hearing," at which an IJ "determines whether it is substantially unlikely that the charges of removability that subject the noncitizen to mandatory detention will be sustained." *Id. See generally Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999). Defendants' "practice of re-detaining previously-released individuals without providing a pre-deprivation hearing to determine whether the re-detention is warranted" therefore does not violate these putative class members' Procedural Due Process rights. (*See* Pls.' Mot. 14.)[4]

---

[4] While some individuals subject to § 1226(c) are entitled to an individualized determination before re-detention, those circumstances—given the present record—appear to be de minimis. First, such individuals may have a Procedural Due Process right to an individualized determination before re-detention if they were subject to § 1226(c) at the time of their initial release. *E.g.*, *Lopez Arevalo*, 2026 WL 2517498, at *4 (collecting cases). This makes sense because any prior release necessarily required a determination that the releasee "presented neither a danger to society nor a flight risk," even if the releasee was subject to § 1226(c). *Castillo v. Chestnut*, No. 1:26-CV-05925-DC-CKD, 2026 WL 2455248, at *4 (E.D. Cal. Aug. 21, 2026), *report and recommendation adopted*, No. 1:26-CV-05925-DC-CKD (HC), 2026 WL 2594124 (E.D. Cal. Sept. 2, 2026). *See generally* 8 C.F.R. §§ 212.5(b), 1236.1(c)(8). Therefore, courts have held that to re-detain a noncitizen subject to § 1226(c) at the time of their initial release, the Government must show changed circumstances (i.e., that the noncitizen is now a danger, flight risk, or "subject to a new detention authority") at a pre-deprivation hearing. *Castillo*, 2026 WL 2455248, at *4. Second, if the Government delays re-detention "until many years after" a releasee became subject to § 1226(c), then the releasee may be entitled to an individualized determination before re-detention. *Cf. Lopez Arevalo*, 2026 WL 2517498, at *4 (citing *Faubricio M.M. v. Warden*, No. 1:25-cv-01725-KES-EGC, 2026 WL 2333518 (E.D. Cal. Aug. 12, 2026)); *Alvarez Reyes v. LaRose*, No. 26-CV-04819, 2026 WL 2690274, at *2 (S.D. Cal. Sept. 14, 2026) ("[A] long-stale arrest or criminal charge might not be supportive of the legitimate interests of immigration detention to avoid flight risk and danger to the community . . . ."). Plaintiffs have presented no evidence on how many noncitizens would fit within either of these groups and therefore be entitled to class membership. Thus, the Court declines to consider either group's potential impact on the present motion.

The Supreme Court suggested in *Jennings* that, if some members of a class claiming a constitutional entitlement to hearings "may not be entitled to . . . hearings as a constitutional matter," a Rule 23(b)(2) class action may not be the "appropriate vehicle." 583 U.S. at 313. Accordingly, the Court finds that Rule 23(b)(2) certification is inappropriate for Plaintiffs' Procedural Due Process claim as to noncitizens who are subject to detention under § 1226(c). Because Defendants' Re-Detention Policy cannot "be . . . declared unlawful only as to all of the class members or as to none of them[,]" s*ee id.*, these noncitizens must be excluded from the proposed class.

**2. APA**

Plaintiffs' APA claims present similar problems for § 1226(c) putative class members. Declaring Defendants' Re-Detention Policy unlawful under the APA would provide no relief to most class members subject to § 1226(c), as they never previously received an individualized assessment to determine whether material changes in circumstances related to flight risk or danger justified re-detention. The parties illustrated this at oral argument. Plaintiffs' counsel stated if Plaintiffs prevail on their APA claim, with respect to class members subject to § 1226(c), the agency would have "to conduct some individualized assessment. Somebody has to look at whether this new . . . criminal contact or this intervening event now suddenly satisfies 1226(c) if previously nothing in the individual's . . . record subjected them to that kind of mandatory detention." (Oral Arg. Tr. ("Tr.") 7:11–8:12.) However, the Government represented that class members subject to mandatory detention currently receive such an individualized assessment of § 1226(c)'s applicability. Defendants' counsel stated:

> To the specific point about a determination for the 1226(c) category, I think there necessarily has to be an individualized determination that a person is subject to that category, because it is only for folks with a criminal history or criminal offense. So my understanding is -- and there's nothing in the allegations of the Complaint that says that the prior practice, which is essentially someone shows up at their ICE check-in, my understanding is the ICE officer looks at their records and then perhaps sees there was an offense, and that officer makes the determination that is a disqualifying . . . criminal

> conviction or offense, and so you are subject to mandatory detention, that -- there's nothing in the Complaint that says that that prior practice and policy is not something that is currently happening or stopped happening.

(Tr. 14:11–24.)

The Court inquired further on whether Defendants had changed their practice with respect to class members subject to § 1226(c).

> THE COURT: . . . But isn't the argument that the prior policy, regardless of the category they're in, 1226(c) or 1226(a), that in the past when people were detained and then released, they were not re-detained without at least notice and a hearing?
>
> MS. GREGG: So my understanding from the allegations in that Complaint, and as -- as kind of explained in the briefs, is that all of that was tied to the 1226(a), you know, release on bond or release on order of recognizance or conditional parole, that the agency after the board case *Matter of Sugay*, I believe, kind of adopted the policy that was in that case, said before you can re-detain someone after you've already said that they're entitled to bond, you have to show a change in circumstances. It had nothing to do with 1226(c). . . .
>
> THE COURT: And with 1226(c), is it your position that it's always been if someone is detained, released, and then commits another crime and subject to mandatory detention, they could be picked up any time without notice or opportunity to be heard, that that was the practice then and now?
>
> MS. GREGG: I believe so, Your Honor. . . . So as far as . . . setting aside a policy to get back to the status quo, again, because there was not really this change in how the Government was dealing with 1226(c) folks, that kind of relief would not apply -- would do nothing for them . . . .
>
> THE COURT: But isn't it required -- for 1226(c), hasn't it always been under the laws or the regulations that there has to be a notice of some event that's happened that subjects them to mandatory detention and a determination that that is, in fact, what happened, and therefore they're now detained mandatorily?
>
> MS. GREGG: Right. So my understanding is that . . . what would happen in this context if someone came in for an ICE check-in, an officer sees in the records that there was criminal history that would subject them to that category, they would detain. They could ask for what's called a *Matter of*

> *Joseph* hearing to challenge that they are correctly included within that mandatory detention category; and if not, they can go through . . . subsequent appellate review.
>
> THE COURT: And that -- that's the way worked in the past, and that's the way it's working now?
>
> MS. GREGG: Correct.

(Tr. 15:3–17:4.)

The Court credits the Government's repeated assertions that class members subject to § 1226(c) are receiving the same process they always have, particularly given that the Government's representations track the cases the Court has reviewed outlining the limited procedural protections afforded those subject to detention under § 1226(c).

The Court further agrees with Defendants that nothing in the Complaint contradicts the idea that Defendants still individually assess whether class members are subject to § 1226(c). The Complaint does not mention § 1226(c). It focuses instead on Defendants arresting "individuals who have been previously deemed fit for release from DHS custody without affording them a pre-deprivation hearing to determine whether changed circumstances related to flight risk or danger justify their re-detention." (*See* Compl. ¶¶ 29, 116, 161.) Notably, a pre-deprivation hearing to determine whether changed circumstances related to flight risk or danger justify re-detention differs from an assessment of whether an individual is subject to § 1226(c). For example, an ICE agent could review a class member's criminal record at their check-in, determine that they are subject to § 1226(c) based on a new qualifying conviction, and detain them. This would constitute an individualized assessment of § 1226(c)'s applicability, but it would not be a pre-deprivation hearing. Nor would it require the agent to make any determination related to flight risk or danger. And it would be largely consistent with Defendants' prior practice. Because a single declaratory judgment would not provide relief to each member of the

putative class, Rule 23(b)(2) certification is inappropriate for Plaintiffs' APA claim with respect to individuals subject to mandatory detention under § 1226(c).[5]

As class members subject to § 1226(c) present intractable problems for certification under Rule 23(b)(2), the Court finds it appropriate to excise them from the class. *See Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 546 (9th Cir. 2013) ("[Rule 23] provides district courts with broad authority at various stages in the litigation . . . to redefine . . . classes as appropriate."). Accordingly, the Court excepts from the class definition—without prejudice to redefining the class on a more fulsome record—class members subject to § 1226(c). *See Ms. L. v. U.S. Immigr. & Customs Enf't*, 331 F.R.D. 529, 538 (S.D. Cal. 2018).

The class thus trimmed, Rule 23(b)(2) is satisfied. Rule 23(b)(2)'s "primary role . . . has always been the certification of civil rights class actions." *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). Its standard is "unquestionably satisfied" when, as here, "members of a putative class seek uniform . . . declaratory relief from policies or practices that are generally applicable to the class." *See id.* at 688 (citation omitted). While Defendants' re-detention practices "may not affect every member of the proposed class and subclass in exactly the same way, they constitute shared grounds" for all class members. *See id.* Contrary to Defendants' assertion that each class member's injury—detention—is amenable only to individualized remedy, as discussed below, every non-1226(c) class member "is allegedly suffering the same (or at least a similar) injury and that injury can be alleviated for every class member by uniform changes" to Defendants' Re-Detention Policy. *See id.* at 689.

---

[5] Such problems may explain why some similar class actions have excluded noncitizens subject to § 1226(c) from the outset. *See, e.g.*, *Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 1001 (N.D. Cal. 2025).

**B. Rule 23(a)**

Having found Rule 23(b)(2) satisfied as to the redefined class, the Court addresses Rule 23(a)'s prerequisites for class certification—numerosity, commonality, typicality, and adequacy of representation. For the reasons stated below, these requirements are met.

**1. Numerosity**

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). Whether joinder is impracticable depends on the facts and circumstances of each case. *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994). Plaintiffs need not state the exact number of potential class members, nor is a specific number required. *Arnold,* 158 F.R.D. at 448. The numerosity requirement is generally satisfied when the class contains 40 or more members, *Al Otro Lado, Inc. v. Wolf*, 336 F.R.D. 494, 501 (S.D. Cal. 2020) (citations omitted), but classes of as few as 25, 19, or even 17 members can still satisfy numerosity. *Gilbert v. MoneyMutual, LLC*, 318 F.R.D. 614, 621 (N.D. Cal. 2016) (citation omitted) (twenty-five); *Escalante v. California Physicians' Serv.*, 309 F.R.D. 612, 617–18 (C.D. Cal. 2015) (nineteen); *Pole v. Estenson Logistics, LLC*, No. CV 15-07196 DDP (EX), 2016 WL 4238635, at *3–6 (C.D. Cal. Aug. 10, 2016) (seventeen). The Ninth Circuit has typically required at least fifteen members to certify a class. *Pole*, 2016 WL 4238635, at *3 (citing *Harik v. California Tchrs. Ass'n*, 326 F.3d 1042, 1051 (9th Cir. 2003)). Further, "where the class includes unnamed, unknown future members, joinder of such unknown individuals is impracticable and the numerosity requirement is therefore met, regardless of class size." *Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986) (citation modified).

Defendants do not challenge numerosity, thus conceding the requirement is met. *See, e.g.*, *Maeda v. Kennedy Endeavors, Inc.*, No. CV 18-00459 JAO-WRP, 2021 WL 2582574, at *10 n.11 (D. Haw. June 23, 2021) (citing *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (stating by failing to oppose numerosity defendants conceded it); *Powers v. McDonough*, 732 F. Supp. 3d 1184, 1197 (C.D. Cal. 2024) (similar). Notably, too,

Plaintiffs have already identified twenty-four class members, which may independently satisfy numerosity. (Pls.' Mot. 9–10; *see Escalante*, 309 F.R.D. at 617–18; *Pole*, 2016 WL 4238635, at *3–6.) And twenty-four is likely an underestimate, as Plaintiffs' estimate is based largely on Westlaw decisions from November of 2025 to February of 2026 "where the discussion of the facts makes clear that the petitioner is a putative class member." (Pls.' Mot. 10–11 n.15.) It is likely that more cases have been added to Westlaw since February of 2026 and that not every class member's case would appear on Westlaw to begin with. Further, Plaintiffs have submitted declarations documenting dozens, if not hundreds, of arrests at ICE check-ins or appointments in the Southern District of California. (*See id.* at 10–12 (summarizing evidence).) It is reasonable to infer that at least a small fraction of the detained noncitizens falls within the class, satisfying numerosity. *See Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 1013 (N.D. Cal. 2025) (finding numerosity met in similar class action challenging re-detention). Additionally, because the class includes those who may be subject to unlawful re-detention in the future, "[t]he parameters of the class change on a daily basis," making joinder "clearly impractical." *See Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982); *Nat'l Ass'n of Radiation Survivors*, 111 F.R.D. at 599; *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) (citation modified) ("Classes including future claimants generally meet the numerosity requirement due to the impracticality of counting such class members, much less joining them."). Numerosity is met.

**2. Commonality**

Rule 23(a)'s second element requires the existence of "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). This element has "'been construed permissively,' and '[a]ll questions of fact and law need not be common to satisfy the rule.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). "However, it is insufficient to merely allege any common question[.]" *Id.* Instead, the plaintiff must allege the existence of a "common contention" that is of "such a nature that it is capable of classwide resolution[.]" *Dukes*, 564 U.S. at 350. As summarized by the Supreme Court:

> What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* (emphasis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

"[C]ommonality only requires a single significant question of law or fact[,]" *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (citing *Dukes*, 564 U.S. at 359), particularly where, as here, a suit "challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). Here, Plaintiffs identify three common questions of law:

> [1] Whether Defendants provided a sufficiently reasoned explanation for their new policy of re-detaining previously-released individuals without conducting an individualized assessment to determine whether material changes in circumstances related to flight risk or danger justify re-detention;
>
> [2] Whether Defendants considered reliance interests engendered by the prior policy of not re-detaining previously-released individuals; and
>
> [3] Whether Defendants' practice of re-detaining previously-released individuals without providing a pre-deprivation hearing to determine whether the re-detention is warranted satisfies Procedural Due Process.

(Pls.' Mot. 14.)

Defendants argue that these questions cannot be answered on a classwide basis because the circumstances surrounding each re-detention are different. The Court disagrees.

**a. Procedural Due Process**

Defendants argue that "[t]he Procedural Due Process claim . . . fails to establish the class members' commonality because the rights and procedures owed to each depend on the statutory authority under which they fall"—§§ 1225(b)(1), 1225(b)(2), or 1226(a). (Defs.' Opp'n 12.) Plaintiffs argue the class contains no members subject to § 1225(b)(1)

(expedited removal), as all class members were re-detained in the interior of the country and have pending § 1229a removal proceedings before an IJ, and thus are detained under § 1226(a). (Pls.' Reply Defs.' Opp'n 5, 9; Tr. 23:7–25:14; Compl. ¶ 149 (alleging "Petitioners and class members were re-detained in the interior of the country at their ICE check-in appointments and thus are currently detained under 8 U.S.C. § 1226(a).").) Defendants respond that class members could be subject to § 1225(b)(1) if they were transferred from expedited to standard removal proceedings under § 1229a then released via a habeas petition. (Defs.' Opp'n 13.) The parties similarly dispute whether the class contains members subject to § 1225(b)(2) (catchall provision for applicants for admission at the border who do not fall under § 1225(b)(1) expedited removal).[6] The Court need not decide these issues, because commonality is satisfied even if the class includes such members.[7]

Plaintiffs' Procedural Due Process claim has two elements: "(1) a deprivation of a constitutionally protected liberty . . . interest, and (2) a denial of adequate procedural protections." *See United States v. 101 Houseco, LLC*, 22 F.4th 843, 851 (9th Cir. 2022).

---

[6] As noted, the Ninth Circuit in *Rodriguez Vazquez* held that "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." 183 F.4th at 1165. Defendants argue that *Rodriguez Vazquez* applies only to "noncitizens who came in without inspection" at the border—not class members like Mr. Fanfan, who were re-detained in the interior after being granted parole. (Tr. 19:16–20:21.) Defendants' cramped reading of *Rodriguez Vazquez* conflicts with the decision's reasoning and broader language. *See Valle v. Mullin*, No. 3:26-CV-00674-MMD-CSD, 2026 WL 3083857, at *2 (D. Nev. Oct. 15, 2026) ("It does not matter . . . that Petitioner was paroled into the country, previously applied for admission, or submitted to inspection upon entry; at the time of his detention, he was not presently seeking admission into the country."); *Mercilien v. Andrews*, No. 1:26-CV-8087-TLN-JDP, 2026 WL 3120982, at *2 (E.D. Cal. Oct. 19, 2026) ("[T]he Courts of Appeals in *Rodriguez Vazquez* and *Hernandez Alvarez* do not limit their rulings in this way."); *Wajid v. Santacruz*, No. 5:26-CV-04034-AYP, 2026 WL 3153344 (C.D. Cal. Oct. 20, 2026); *Dominique v. LaRose*, No. 26-CV-4948-RFL, 2026 WL 2728150, at *1 (S.D. Cal. Sept. 4, 2026) (similar); *Matamoros v. Warden*, No. 1:26-CV-8044 DC CSK, 2026 WL 3136190, at *2 (E.D. Cal. Oct. 20, 2026) (similar).

[7] "The Ninth Circuit hasn't said whether § 1225(b)(2) reaches a parolee whose parole lapsed years earlier and who is re-arrested far from any port of entry. The Court need not decide that question. Regardless of which statute governs . . . custody, the constitutional question remains:" did Defendants deprive Plaintiffs of a constitutionally protected liberty interest without adequate procedural protections? *See Ramirez Salas v. Hernandez*, No. 2:26-CV-02981-JNW, 2026 WL 2969699, at *2 (W.D. Wash. Oct. 2, 2026).

In *Casimir v. Chestnut*, the district court considered a habeas petition in which the petitioner was "re-detained without any finding of changed circumstances demonstrating that he was a flight risk or danger to the community prior to revoking his release." No. 1:26-CV-06320 (VC), 2026 WL 2516709, at *1 (E.D. Cal. Aug. 25, 2026). The court declined to "determine whether § 1225 or § 1226 applies in this case because petitioner has a liberty interest in his continued release *regardless of the applicable detention scheme*." *Id.* at *2 (emphasis added) (citations omitted). The court went on to hold that the Government violated the petitioner's Procedural Due Process rights by re-detaining him, and required "a pre-deprivation bond hearing before a neutral arbiter where the Government must show by clear and convincing evidence that Petitioner is a flight risk or danger to the community" before he could be re-detained again. *Id.* at *3. *See also Hassan v. Warden*, No. 1:26-CV-08279 (VC), 2026 WL 3151098, at *2 (E.D. Cal. Oct. 21, 2026) (similar); *Escarcega v. Warden of Golden State Annex Det. Facility*, No. 1:26-CV-01012 DAD SCR, 2026 WL 480500, at *2 (E.D. Cal. Feb. 20, 2026), *report and recommendation adopted*, No. 1:26-CV-01012-DAD-SCR, 2026 WL 640913 (E.D. Cal. Mar. 6, 2026) (similar). This Court also has held that noncitizens subject to § 1225(b)(2) maintain a protected liberty interest in "remaining free" and may not be re-detained absent a "pre-deprivation hearing before a neutral decisionmaker at which [the Government] must prove that changed circumstances related to flight risk or danger warrant . . . re-detention." *Penaloza Mercado v. Dir., Otay Mesa Det. Ctr.*, No. 26CV1168 DMS SBC, 2026 WL 1091750, at *2–3 (S.D. Cal. Apr. 22, 2026); *Gallardo v. Att'y Gen. of U.S.*, No. 26CV2273 DMS JLB, 2026 WL 1146166 (S.D. Cal. Apr. 28, 2026). Thus, excepting noncitizens detained under § 1226(c), common questions with common answers exist among all putative class members regardless of the particular detention scheme: was there a deprivation of a constitutionally protected liberty interest, and if so, was that deprivation accomplished without adequate procedural protections?

The Ninth Circuit's decision in *Parsons v. Ryan* is instructive. 754 F.3d 657 (9th Cir. 2014). The *Parsons* court faced a similar commonality question. *Parsons* involved a

claim that certain policies and practices of the Arizona Department of Corrections ("ADC") violated the Eighth Amendment's proscription against cruel and unusual punishment. *Id.* at 662–63. The defendants in *Parsons*, similar to Defendants here, argued the commonality requirement was not met because the plaintiffs' claims were simply "'a collection of individual constitutional violations,' each of which hinges on 'the particular facts and circumstances of each case.'" *Id.* at 675 (quoting Defs.' Reply Br. at 9–10). The Ninth Circuit disagreed. It found the defendants' argument "rest[ed] upon a misunderstanding of the plaintiffs' allegations." *Id.* at 676. Contrary to the defendants' interpretation of the claim, the court stated, "The Complaint does not allege that the care provided on any particular occasion to any particular inmate (or group of inmates) was insufficient, but rather that ADC policies and practices of statewide and systemic application expose all inmates in ADC custody to a substantial risk of serious harm." *Id.* (citation omitted). The court continued:

> These policies and practices are the 'glue' that holds together the putative class …; either each of the policies and practices is unlawful *as to every inmate* or it is not. That inquiry does not require us to determine the effect of those policies and practices upon any individual class member (or class members) or to undertake any other kind of individualized determination.

*Id.* at 678 (emphasis added).

Here, as in *Parsons*, Plaintiffs' claims do not rest on the individual circumstances of each re-detention. Rather, Plaintiffs are challenging Defendants' *systemic practice* of re-detaining noncitizens whom Defendants previously released from detention without a hearing to determine whether material changes in circumstances justify re-detention. Under these circumstances, the reasoning of *Parsons* applies and compels the same conclusion: the commonality requirement is met. *See also Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citations omitted) ("[I]n a civil-rights suit, . . . commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."); *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 809 (9th Cir. 2020) (citation modified) (quoting *Sibron v. New York*, 392 U.S. 40, 58

(1968)) ("[While] the constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of an individual case, that question is quite different from . . . the *adequacy of the procedures* on which the government relies to make arrests and detain . . . .").[8]

**b. APA**

Plaintiffs seek to set aside Defendants' Re-Detention Policy as "arbitrary and capricious[,]" 5 U.S.C.§ 706(2)(A), and violative of their Procedural Due Process rights. *Id.* § 706(2)(B). An action is arbitrary and capricious if the agency fails to "articulate a satisfactory explanation" for it. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 42–43 (1983). "[W]here the agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law." *Encino Motorcars, LLC v. Navarro,* 579 U.S. 211, 221 (2016). Agency action is also arbitrary and capricious where the agency fails to consider the "serious reliance interests . . . engendered . . . [by] longstanding policies[.]" *Id.* at 222. Similarly, agency action may be set aside if it is "contrary to constitutional right[.]" 5 U.S.C. § 706(2)(B).

---

[8] In the briefing, Defendants raised an argument about the entry fiction doctrine as applied to noncitizens detained under § 1225(b). Specifically, Defendants cited *Department of Homeland Security v. Thuraissigiam* for the proposition that class members subject to § 1225(b) are due less process than other class members under the "so-called entry fiction that all aliens who arrive at ports of entry are treated for due process purposes as if stopped at the border." (Defs.' Opp'n 12 (citation modified) (quoting 591 U.S. 103, 139 (2020)).) The entry fiction is irrelevant here. "*Thuraissigiam* was an admission, not a detention, case." *Padilla v. U.S. Immigr. & Customs Enf't*, No. 24-2801, 2026 WL 2822044, at *19 (9th Cir. Sept. 21, 2026). Unlike Plaintiffs here, the petitioner in *Thuraissigiam* "made no mention of release from custody." *See id.* at *16 (quoting 591 U.S. at 115). The *Thuraissigiam* Court emphasized that it was specifically addressing the petitioner's "admission-related rights," holding only that an alien in his position "has only those *rights regarding admission* that Congress has provided by statute." *Id.* (emphasis in original) (quoting 591 U.S. at 140). "Admission and detention occupy fundamentally different positions in our legal order," and "except for the extremely narrow category of people covered by the entry fiction, *every* person in the United States is entitled [to] the Fifth Amendment's guarantee of due process, regardless of their citizenship or legal status." *Id.* at *15–16 (emphasis in original). Plaintiffs do not raise any claims regarding their admission; they challenge only their re-detention. (Compl.) *Thuraissigiam* poses no bar to such a challenge.

Plaintiffs argue there are at least three questions with common answers which will drive classwide resolution. The Court agrees. Questions common to the class include: whether Defendants provided a sufficiently reasoned explanation for their Re-Detention Policy; whether Defendants considered reliance interests engendered by the prior policy; and whether the Re-Detention Policy satisfies Procedural Due Process. The answers to these questions apply classwide.

The fact that staying the policy might have different effects on different class members, as Defendants argue, does not defeat commonality. Just as in *Parsons*, the Re-Detention Policy is either insufficiently reasoned and unlawful as to every class member or it is not. 754 F.3d at 678. Similarly, the reliance interests were either considered by Defendants or they were not, and the Re-Detention Policy either satisfies (or fails) Procedural Due Process, classwide. These inquiries do not require the Court "to determine the *effect* of those policies upon any individual class member . . . or to undertake any other kind of individualized determination." *See Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 1014 (N.D. Cal. 2025) (citation modified) (quoting *Parsons,* 754 F.3d at 678). Commonality is therefore established for Plaintiffs' APA claims.

**3. Typicality**

Rule 23(a)'s third requirement is typicality, which focuses on the relationship of facts and issues between the class and its representatives. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). The typicality requirement will occasionally merge with the commonality requirement, *Parsons*, 754 F.3d at 687, because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named

plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5.

Typicality is satisfied here. Each of the named plaintiffs "faces the same risk of re-arrest by DHS pursuant to the re-detention policy faced by all members of the class." *See Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 1015 (N.D. Cal. 2025). The named plaintiffs continue to face the same ICE check-ins at which they were first allegedly unlawfully detained, and the Court's TRO barring their re-detention is now long expired. (Order Denying Defs.' Mot. Dismiss 5, 10–11.) "The named plaintiffs thus allege the same or a similar injury as the rest of the putative class; they allege that this injury is a result of a course of conduct that is not unique to any of them; and they allege that the injury follows from the course of conduct at the center of the class claims." *See Garro Pinchi*, 813 F. Supp. 3d at 1015–16. "[P]otential differences as to the circumstances under which plaintiffs and other class . . . members may be re-arrested—such as the location of potential re-arrest, the statute governing such arrest, or the existence of any changed circumstances that might have justified such arrest if considered by DHS—do not destroy typicality." *Id.* at 1016.

**4. Adequacy**

Rule 23(a)'s final requirement is adequacy. Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is grounded in constitutional due process concerns; "absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). In reviewing this issue, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). The named plaintiffs

and their counsel must have sufficient "zeal and competence" to protect the interests of the rest of the class. *Fendler v. Westgate-California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975).

Adequacy is met here. The Court has no reason to doubt the representations of the class representatives that they have no conflict of interest with the class, clearly understand their duties, and are currently willing and able to perform them. (*See* Pls.' Mot. 16–17.) Defendants point to *Amchem Products., Inc. v. Windsor*, which held the class representatives inadequate. *See* 521 U.S. 591, 625–27 (1997). *Amchem* is inapposite, as it dealt with conflicts of interest regarding payment structure and timing, while Plaintiffs here all share an equal interest in avoiding re-detention. *See id.* Plaintiffs have also demonstrated their counsel are adequate. There is no conflict between Plaintiffs' counsel and the putative class, and counsel have demonstrated they will prosecute the case vigorously on behalf of the class. Accordingly, Rule 23(a)(4) is satisfied.

**5. Ascertainability**

Defendants argue that the proposed class definition "contains several vague terms, making it impossible to ascertain who belongs and who does not." (Defs.' Opp'n 10.) In the Ninth Circuit, Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification. *Briseno v. ConAgra Foods*, *Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017); *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 929 (9th Cir. 2018). A class need only "not be vaguely defined and . . . be sufficiently definite to conform to Rule 23." *Briseno*, 844 F.3d at 1125 n.4 (citation omitted).

Defendants argue "it is unclear what is meant by the modifier, 'who DHS previously released from custody.'" (Defs.' Opp'n 10 n.5.) According to Defendants, the modifier could be read to mean "only those release[d] by ICE," and this lack of specificity "handicaps ICE's ability to confirm class membership (and comply with any future order concerning the class) because information regarding prior release by other components is not readily in its control" and "ICE does not control "other DHS components." (*Id.*) That concern is unfounded because Plaintiffs also name the Secretary of DHS as a defendant,

and he has authority to direct other DHS components. (*See* Compl. ¶ 21; 6 U.S.C. § 112(a)(2)–(3).)

Defendants also argue it is "unclear what would qualify as a 'pre-deprivation hearing' by ICE." (Defs.' Opp'n 10 n.5.) For example, they question whether "ICE providing verbal notice to the individuals of the changed circumstances justifying their detention" would suffice. (*Id.*) As stated in similar cases, an acceptable pre-deprivation hearing is one held before a neutral decisionmaker at which Defendants must prove by clear and convincing evidence that material changed circumstances related to flight risk or danger warrant re-detention. *See, e.g.*, *Casimir v. Chestnut*, No. 1:26-CV-06320 (VC), 2026 WL 2516709, at *3 (E.D. Cal. Aug. 25, 2026); *see also* Order Granting Pet'rs' Ex Parte Mot. TRO 9 (requiring Government prove changed circumstances related to flight risk or danger warrant Petitioners' re-detention). The class is sufficiently definite to satisfy Rule 23.

## IV.

## CONCLUSION AND ORDER

For these reasons, Plaintiffs' motion for provisional class certification is granted in part and denied in part as to Plaintiffs' Procedural Due Process and APA claims. Specifically, the Court provisionally certifies the following class:

> Noncitizens with pending 8 U.S.C. § 1229a removal proceedings who have been or will be re-detained in the Southern District of California while appearing at an ICE "check-in" or appointment; who are not subject to detention under 8 U.S.C. § 1226(c); who DHS previously released from custody; and for whom ICE has not conducted a pre-deprivation hearing to determine whether material changes in circumstances justify re-detention.

Plaintiffs are appointed as Class Representatives, and Counsel from the UCLA School of Law Center for Immigration Law and Policy and the Center for Human Rights & Constitutional Law are appointed as counsel for this Class pursuant to Federal Rule of Civil Procedure 23(g).

**IT IS SO ORDERED.**

Dated: November 24, 2026

Hon. Dana M. Sabraw
United States District Judge